ACCEPTED
04-14-00878-CR & 04-14-00879-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/20/2015 5:01:42 PM
KEITH HOTTLE
CLERK

## No. 04-14-00878-CR
## No. 04-14-00879-CR

In the

Court of Appeals

for the

Fourth District of Texas

at San Antonio

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

3/20/2015 5:01:42 PM

KEITH E. HOTTLE
Clerk

————————◆————————

## No. 2013CR10841W
## No. 2013CR10842W

In the 437th District Court
Bexar County, Texas

————————◆————————

## MATTHEW DOUGLAS HAYES

*Appellant*

V.

## THE STATE OF TEXAS

*Appellee*

————————◆————————

APPELLANT'S BRIEF

————————◆————————

**MANDY MILLER**
Attorney for Matthew Douglas Hayes
State Bar No: 24055561
2910 Commercial Ctr. Blvd., Ste. 103-201
Katy, TX 77494
(832) 900-9884
Fax: (877) 904-6846
mandy@mandymillerlegal.com

APPELLANT REQUESTS ORAL ARGUMENT

# IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Counsel for the State:

**Nicholas LaHood** — District Attorney of Bexar County

**Rico Valdez** — Assistant District Attorney on appeal

**Miguel Najera** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Matthew Douglas Hayes**

Counsel for Appellant:

**L. Michael Cohen** — Counsel at trial

**Mandy Miller** — Counsel on appeal

Trial Judge:

**Hon. Lori Valenzuela**

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ...........................................................................1

INDEX OF AUTHORITIES...........................................................................................4

STATEMENT OF THE CASE.........................................................................................6

STATEMENT OF FACTS................................................................................................6

SUMMARY OF THE ARGUMENT ...............................................................................9

APPELLANT'S FIRST POINT OF ERROR..................................................................9

   PRESERVATION........................................................................................................10

   THE TRIAL COURT ERRED IN FAILING TO HOLD A HEARING ON APPELLANT'S MOTION FOR NEW TRIAL...................................................................................................................11

APPELLANT'S SECOND POINT OF ERROR.............................................................12

   THERE WAS NO EVIDENCE TO SUBSTANTIATE APPELLANT'S GUILTY PLEA TO AGGRAVATED ROBBERY, AS REQUIRED BY ARTICLE 1.15 OF THE TEXAS PENAL CODE .......13

   THERE IS NO EVIDENCE TO SUPPORT THE TRIAL COURT'S AFFIRMATIVE FINDING THAT A DEADLY WEAPON WAS USED TO COMMIT THE OFFENSE.............................................18

   APPELLANT IS ENTITLED TO A NEW TRIAL IN THE INTEREST OF JUSTICE.............................19

CONCLUSION...............................................................................................................25

CERTIFICATE OF COMPLIANCE...............................................................................26

CERTIFICATE OF SERVICE ........................................................................................26

# INDEX OF AUTHORITIES

**CASES**

*Appleman v. State,*
531 S.W.2d 806 (Tex. Crim. App. 1976) ...........................................................................12

*Carranza v. State,*
960 S.W.2d 76 (Tex. Crim. App. 1998)...............................................................................9

*Ex parte Martin,*
747 S.W.2d 789 (Tex. Crim. App. 1988) ...........................................................................13

*Ex parte Williams,*
703 S.W.2d 674 (Tex. Crim. App. 1986) ...........................................................................12

*Keeter v. State,*
74 S.W.3d 31 (Tex. Crim. App. 2002)...............................................................................22

*King v. State,*
29 S.W.3d 556 (Tex. Crim. App. 2000)...............................................................................8

*McGill v. State,*
200 S.W.3d 325 (Tex. App.--Dallas 2006, no pet.) ..........................................................13

*Menefee v. State,*
287 S.W.3d 9 (Tex. Crim. App. 2009) ..........................................................................12, 13

*Mullins v. State,*
37 Tex. 337 (1872) ............................................................................................................18

*Plummer v. State,*
410 S.W.3d 855 (Tex. Crim. App. 2013) ...........................................................................17

*Reyes v. State,*
849 S.W.2d 812 (Tex. Crim. App. 1993)............................................................................9

*Rozell v. State,*
176 S.W.3d 228 (Tex. Crim. App. 2005).............................................................................9

*Smith v. State,*
286 S.W.3d 333 (Tex. Crim. App. 2009).............................................................................8

*State v. Dixon,*
893 S.W.2d 286 (Tex. App.--Texarkana 1995, no pet.)....................................................19

*State v. Gonzalez,*
  820 S.W.2d 9 (Tex. App.--Dallas 1991), *aff'd,*
  855 S.W.2d 692 (Tex. Crim. App. 1993) ................................................................18

*State v. Lyons,*
  820 S.W.2d 46 (Tex. App.--Fort Worth 1991, no pet.)......................................19

*Waller v. State,*
  931 S.W.2d 640 (Tex. App.--Dallas 1996, no pet) ..........................................12

## STATUTES

TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005)........................................................12

TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2010) .....................................................22

TEX. PEN. CODE ANN. § 1.07(a)(46) (West 2011) ..............................................................15

TEX. PEN. CODE ANN. § 29.02 (West 2005) ......................................................................13

TEX. PEN. CODE ANN. § 29.03 (West 2005)................................................................13, 14

## RULES

TEX. R. APP. P. 21.6..............................................................................................................9

TEX. R. APP. P. 21.2 ............................................................................................................10

TEX. R. APP. P. 38.2(a)(1)(A)................................................................................................1

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with four counts of aggravated robbery, all arising out of one criminal transaction. (RR I[1] 5, 6). On December 4, 2013, appellant pled guilty to two charges of aggravated robbery and submitted to a pre-sentence investigation (PSI). (RR I 5, 6, 8). A hearing was held on January 28, 2014. (RR II). On September 9, 2014, appellant was sentenced to seven years confinement in the Institutional Division of the Texas Department of Criminal Justice. (RR III 8).

## STATEMENT OF FACTS

Nathan Lawson, Nicholas Raden, Roxanne Cunningham, and Sabriya Goldstone were drinking beer at Lawson and Raden's apartment when someone knocked on the door. (CR 32, 46; Appendix A). When Lawson answered the door, Rakeem Boyd grabbed Lawson by the shirt and pushed him back into the apartment. (CR 46). Boyd was followed by Jerrod Lanier and appellant. (CR 32, 46; Appendix A). Lawson placed Boyd into a headlock until Boyd punched him in the face several times. (CR 32). Boyd claimed he had a gun and threatened to kill everyone if Lawson continued to fight. (CR 32, 46; Appendix A).

---

[1] There are three reporter's records. The record from the plea proceeding will be referred to as RR I. The record from the pre-sentence investigation hearing will be referred to as RR II. Finally, the record from the sentencing hearing will be referred to as RR III.

5

During this time, appellant was struggling with Raden. (CR 46, 49; Appendices A, B). Lawson thought he saw the outline of a gun in appellant's sweatshirt pocket. (CR 46; Appendix A). Raden claims that appellant placed a hand to his side and threatened to "blow him away." (CR 49; Appendix B). Raden responded that he knew what knuckles felt like and that it was not a gun. (CR 49; Appendix B). Appellant then loosened his grip on Raden to allow him to breathe more easily. (CR 49; Appendix B).

After taking several items, appellant and the co-defendants ran from the apartment. (CR 46, 49; Appendices A, B). Lawson grabbed his gun and chased the perpetrators. (CR 47; Appendix A). Just a short while later, appellant was apprehended .2 miles from the scene and Boyd and Lanier were located .3 miles away. (CR 18). Despite a search by a law enforcement canine unit, no weapon was ever found. (CR 19). Boyd and Lanier refused to cooperate with law enforcement and immediately requested the assistance of counsel. (CR 19). Appellant fully cooperated with the police and provided a statement regarding his involvement in the robbery. (CR 20).

Just six weeks later, appellant pled guilty to two counts of aggravated robbery and submitted to a PSI. (RR I 7, 8). The State agreed to a recommendation that appellant would receive no more than ten years confinement in the Institutional Division of the Texas Department of Criminal Justice. (RR I 5). In exchange,

6

appellant agreed to cooperate with the Bexar County District Attorney and testify against his co-defendants. (CR 10).

On January 28, 2014, a brief punishment hearing was conducted. In addition to the evidence contained in the PSI report, appellant presented testimony from appellant's family and a forensic psychologist, Dr. Ferrell. (RR II 23-28). Dr. Ferrell met with appellant twice in the county jail, shortly before the hearing. (RR II 24). The doctor testified briefly that appellant's tests scores reflected features of PTSD and depression. (RR II 25, 26).

After the hearing, the trial court postponed sentencing in the event appellant had to testify against his co-defendants. (RR II 6, 34). The court also allowed appellant to travel to his home state of Atlanta until he could be sentenced in September. (RR II 32, 33).

On September 9, 2014, the court sentenced appellant to seven years confinement in the Institutional Division of the Texas Department of Criminal Justice on two counts of aggravated robbery. (RR III 8). Rakeen Boyd and Jerrod Lanier were charged with aggravated robbery. (Appendix C). But, despite their failure to cooperate with law enforcement, they both pled to robbery. (Appendix C). The same judge who presided over appellant's case sentenced Boyd to eight years confinement and Lanier to six years confinement. (Appendix C).

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion in failing to conduct a hearing on appellant's motion for new trial. The motion raises issues not determinable simply by examining the record; and those issues could have entitled appellant to relief.

The trial court abused its discretion in overruling appellant's motion for new trial by operation of law because appellant has established, by a preponderance of the evidence, appellant's plea of guilty to aggravated robbery was not substantiated by the evidence, as required by Texas Code of Criminal Procedure article 1.15. The motion also established that the evidence was insufficient to support the trial court's affirmative finding that a deadly weapon was used during the course of the robbery. Finally, appellant established that a new trial should be granted in the interest of justice due to newly discovered evidence regarding appellant's s diagnosed post-traumatic stress disorder (PTSD).

## APPELLANT'S FIRST POINT OF ERROR

The trial court abused its discretion in failing to conduct a hearing on appellant's motion for new trial. A hearing on a motion for new trial serves a two-fold purpose. It permits the trial court to decide whether the cause shall be retried; and it prepares a record for presenting issues on appeal in the event the motion is denied. *Smith v. State,* 286 S.W.3d 333, 338 (Tex. Crim. App. 2009).

A trial court's decision not to hold a hearing on a motion for new trial is reviewed for an abuse of discretion. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). To be entitled to a hearing on a motion for new trial, the defendant must present a motion for new trial "raising matters [that are] not determinable from the record, which could entitle him to relief[.]" *King v. State,* 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). The motion must "be supported by [an] affidavit specifically showing the truth of the grounds" asserted in the motion. *Id.*; *Reyes,* 849 S.W.2d at 815.

PRESERVATION

In order to preserve error for appellate review, the defendant "must present the motion for new trial to the trial court within 10 days of filing it." TEX. R. APP. P. 21.6; *see also Id.* To "present" the motion means to do something to bring it directly to the attention of the trial court or someone authorized to act on the court's behalf. *Carranza v. State,* 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). The presentation can be signified by a ruling on the motion, a signature or notation on the proposed order, a hearing date, or some other indication that the movant actually notified the trial court of the existence of the motion and did not simply file the motion with the clerk. *Id.* "[A] reviewing court does not reach the question of whether a trial court abused its discretion in failing to hold a hearing if no request for a hearing was presented to it." *Rozell v. State,* 176 S.W.3d 228, 230 (Tex. Crim. App. 2005).

9

The clerk's record contains a version of appellant's motion for new trial that does not show that the page indicating presentment was signed by the trial court. (CR 82). Appellant has filed a motion to supplement the record with a supporting affidavit evidencing that appellant's motion for new trial was properly preserved. (Appendix D).

THE TRIAL COURT ERRED IN FAILING TO HOLD A HEARING ON APPELLANT'S MOTION FOR NEW TRIAL

In his motion for new trial, appellant alleged that there was no evidence to substantiate appellant's guilty plea to aggravated robbery, as required by article 1.15 of the Texas Penal Code, to support the trial court's affirmative finding of a deadly weapon. (CR 67-74). Appellant also alleged that a new trial should be granted in the interest of justice. (CR 74-79). As previously noted, a trial court should hold a hearing on a motion for new trial if the motion and attached affidavit raise matters not determinable from the record and when such matters could entitle the movant to relief. *Id.*; *see also* TEX. R. APP. P. 21.2.

A hearing was necessary to determine whether the State had met its statutory burden to substantiate appellant's pleas to aggravated robbery. There is a significant factual question as to whether a deadly weapon, namely a firearm, was used or exhibited during the course of the robbery. This issue is crucial in order to substantiate not only appellant's pleas, but the court's affirmative finding of a deadly weapon. Should the court find that the State did not meet its burden to substantiating

10

appellant's pleas to aggravated robbery, or the court's deadly weapon finding, appellant's convictions could be conformed to robbery. This would allow appellant to apply for shock probation under article 42.12 § 15(f)(3) of the Texas Code of Criminal Procedure. It would also greatly impact appellant's parole eligibility.

A hearing was also necessary to develop appellant's experiences in the military that led to his PTSD and how that manifested into his daily life. A hearing would have further developed evidence regarding appellant's PTSD diagnosis, his treatment plan, and prognosis. While the trial court had some information regarding appellant's PTSD, it was limited to the very brief testimony of Dr. Ferrell. The doctor had only limited interaction with appellant prior to the pleas. However, upon returning home after the PSI hearing, appellant began receiving extensive treatment through the Veterans Affairs hospital in Atlanta. (CR 115-118; Appendix H). Appellant's treating physician in Atlanta is now able to present a more thorough explanation of appellant's illness.

Because there were issues raised in appellant's motion for new trial that contained matters not determinable from the record that could have entitled appellant to relief, the trial court abused its discretion in failing to conduct a hearing. Accordingly, this cause should be remanded to the trial court in order to conduct a hearing to further develop the issues raised in the motion for new trial.

## APPELLANT'S SECOND POINT OF ERROR

The trial court abused its discretion in overruling appellant's motion for new trial by operation of law because appellant has established, by a preponderance of the evidence, that his plea of guilty to aggravated robbery was not substantiated by the evidence, as required by Texas Code of Criminal Procedure article 1.15. The motion also established that the evidence was insufficient to support the trial court's affirmative finding that a deadly weapon was used during the course of the robbery. Finally, appellant established that a new trial should be granted in the interest of justice due to newly discovered evidence regarding his diagnosed PTSD.

It is within the trial court's sound discretion to grant or deny a motion for new trial. *Waller v. State,* 931 S.W.2d 640, 644 (Tex. App.--Dallas 1996, no pet). Therefore, a trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *Id.*; *Appleman v. State,* 531 S.W.2d 806, 810 (Tex. Crim. App. 1976).

### THERE WAS NO EVIDENCE TO SUBSTANTIATE APPELLANT'S GUILTY PLEA TO AGGRAVATED ROBBERY, AS REQUIRED BY ARTICLE 1.15 OF THE TEXAS PENAL CODE

When a defendant enters a plea of guilty to a non-capital felony offense, article 1.15 of the Texas Code of Criminal Procedure requires the State to offer evidence of guilt in support of the plea. TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005). And, according to article 1.15, a trial court is not permitted to render a conviction without evidence establishing a defendant's guilt even if he has entered a plea of guilty

12

or no contest. *Id.*; *Menefee v. State,* 287 S.W.3d 9, 13 (Tex. Crim. App. 2009). This statute is an additional procedural safeguard afforded those charged with crimes in the State of Texas. *Ex parte Williams,* 703 S.W.2d 674, 678 (Tex. Crim. App. 1986); *Menefee,* 287 S.W.3d at 13.

After appellant pled guilty to aggravated robbery, the State was no longer required to prove every element of the offenses beyond a reasonable doubt. *Ex parte Martin,* 747 S.W.2d 789, 792-93 (Tex. Crim. App. 1988); *McGill v. State,* 200 S.W.3d 325, 330 (Tex. App.--Dallas 2006, no pet.). But article 1.15 does require substantiation of the pleas. *Menefee,* 287 S.W.3d at 14. "By its plain terms [1.15] requires evidence in addition to, and independent of, the plea itself to establish the defendant's guilt." *Id.* If the State fails to introduce sufficient evidence under the standard set forth in article 1.15, the trial court is not authorized to convict. *Id.* And a conviction rendered without sufficient evidence to support the no contest or guilty plea constitutes error. *Id.*

There is no evidence to substantiate appellant's pleas to aggravated robbery. A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PEN. CODE ANN. § 29.02 (West 2005). On the other hand, a person commits aggravated robbery if he commits

13

robbery and he causes serious bodily injury to another, uses or exhibits a deadly weapon, or causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is 65 years of age or older, or a disabled person.  TEX. PEN. CODE ANN. § 29.03 (West 2005).

The complainants' statements indicate that Boyd announced that he had a gun and threatened to kill everyone if Lawson continued to fight him.  (CR 46; Appendix A).  The complainants also claimed that appellant stated "Don't fight or I'll put holes in all of you."  (CR 46; Appendix A).  Lawson thought that he saw the outline of a gun in appellant's sweatshirt pocket.  (CR 46; Appendix A).

But Raden stated that appellant placed a hand to his side and threatened to "blow him away."  (CR 49; Appendix B).  Raden responded that he knew what knuckles felt like and that it was not a gun.  (CR 49; Appendix B).  Raden never saw a gun and was never in fear for his life.  (CR 50; Appendix B).

Lawson and Raden reported that they suffered bruising on their faces as a result of the attack.  (CR 90, 91; Appendix F).  Cunningham sustained a cut on her lip.  (CR 92; Appendix F).  None of the complainants required medical treatment.  (CR 90-93; Appendix F).

Because none of the complainants were over 65, appellant could have only committed aggravated robbery if he, or a co-defendant, caused *serious* bodily injury to the complainants or *used or exhibited* a deadly weapon during the course of the robbery.

14

*See* TEX. PEN. CODE ANN. § 29.03 (West 2005). Despite appellant's pleas to aggravated robbery, the evidence only supports a finding that he is guilty of robbery.

"Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN. CODE ANN. § 1.07(a)(46) (West 2011). As evidenced by the PSI, the complainants reported their injuries as bruising and a cut. Therefore, none of the complainants suffered serious bodily injury.

The only evidence establishing that any of the perpetrators possessed a gun during the robbery was from Boyd's words that he had a gun and Lawson's statement that he thought he saw the outline of a weapon in appellant's sweatshirt. But the complainant who was nearest appellant established that appellant did not have a gun and only used his knuckles to force Raden into compliance.

Appellant immediately admitted his role in the offenses, cooperated with law enforcement, agreed to testify against the co-defendants, and has accepted responsibility for his actions. However, he has consistently denied that anyone used a weapon during the course of the robbery. (CR 98-100; Appendix E). And although law enforcement responded to the scene shortly after the offense, and the suspects were apprehended quickly, no weapon was ever found.

15

But even assuming that appellant or the co-defendants were carrying a weapon, there is no evidence that the weapon was used or exhibited during the course of the robbery. In *Patterson v. State*, the Court of Criminal Appeals decided that the term "exhibited a deadly weapon" used in Texas Code of Criminal Procedure 42.12 § 3g means that the weapon was *consciously* shown or displayed during the commission of the offense. [Emphasis added] 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). And the term "used a deadly weapon" means that "the deadly weapon was employed or utilized in order to achieve its purpose." *Id.* Therefore, the actor must use the object as a deadly weapon, and not for some other purpose. The Court then explained that "one can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it." *Id.*

In *McCain v. State*, the Court also found that a person "uses or exhibits a deadly weapon" under the aggravated robbery statute if he employs the weapon in any manner that "facilitates the associated felony." 22 S.W.3d 497 (Tex. Crim. App. 2000). In *McCain*, the Court was asked to determine whether the evidence was sufficient to support a jury's finding that the defendant committed aggravated robbery. The complainant was physically attacked and robbed by the defendant. *Id.* at 499. The complainant testified that she saw a knife in the defendant's back pocket during the offense. *Id.* There was no evidence that McCain touched, brandished, or

16

referred to the knife during the robbery. *Id.* After the robbery, a butcher knife was found on the defendant. *Id.*

Considering the standard set for determining the sufficiency of the evidence in *Jackson v. Virginia*[2], the Court found that any rational trier of fact could have found that the knife was exhibited during the criminal transaction because the knife was exposed and visible during the crime. *Id.* at 503. But the court was careful to point out that it was not "equating mere possession with 'use or exhibit.'" *Id.* And it acknowledged that its decision may have differed if the knife had been completely covered. *Id.* at 503 ("Had the knife been completely concealed by appellant's clothing, additional facts would have been needed to establish that the butcher knife was used.").

Lawson told law enforcement that he thought he saw the outline of a gun under appellant's sweatshirt. (CR 46; Appendix A). His own statement evidences his uncertainty of its presence. Unlike in *McCain*, no weapon was found. And even if there is sufficient evidence to believe that one of the suspects was carrying a gun, there is no evidence that it was exposed or used to facilitate the commission of the robbery. There is no evidence that the supposed gun was consciously exposed. And none of the perpetrators touched or displayed a weapon.

---

[2] Cite

17

The purpose of the deadly weapon provision is to discourage and deter felons from taking and using deadly weapons with them as they commit their crimes. *Plummer v. State,* 410 S.W.3d 855, 864 (Tex. Crim. App. 2013). But this deterrence rationale works only if the actor makes a conscious decision to "use" or "exhibit" the weapon to assist in committing the felony. *Id.* Thus, the mere possession of a deadly weapon during a felony offense is not covered by the statute. *Id.* Had the Legislature intended that mere possession could trigger a deadly-weapon finding, it could easily have said so. *Id.* Because the Legislature did not do so, it is only when the possession of the deadly weapon "facilitates the associated felony" that the factfinder may make an affirmative finding. *Id.* at 864-65.

The evidence establishes Lawson believed that he observed the outline of a gun in appellant's sweatshirt. (CR 46; Appendix A). No description of the alleged gun was given. (CR 46; Appendix A). None of the suspects pulled out a gun, or consciously exposed a gun. (CR 46; Appendix A). And Raden stated that he was never in fear for his life. (CR 50; Appendix B). Despite being apprehended shortly after the robbery, no weapon was ever found. (CR 19).

When interviewed about the offense prior to sentencing, none of the complainants alleged that a weapon was used or exhibited during the offense. (CR 86-96; Appendix F). The defendant has continually maintained that, although he

18

participated in the robbery, no one had a weapon during the offense. (Appendix E). Thus, the evidence is insufficient to support the court's affirmative finding of a deadly weapon despite appellant's plea to the charge set forth in the information.

<u>APPELLANT IS ENTITLED TO A NEW TRIAL IN THE INTEREST OF JUSTICE</u>

Trial courts have the authority to grant new trials in the interest of justice. "The discretion of the Court, in granting new trials, is almost the only protection to the citizen against illegal or oppressive verdicts of prejudiced, careless, or ignorant juries, and we think the [trial] Court should never hesitate to use that discretion whenever the ends of justice have not been attained by those verdicts." *Mullins v. State,* 37 Tex. 337, 339-340 (1872); *see State v. Gonzalez,* 820 S.W.2d 9, 12 (Tex. App.--Dallas 1991), *aff'd,* 855 S.W.2d 692, 694 (Tex. Crim. App. 1993) (trial judges have had discretion to grant new trials in interest of justice for more than 120 years); *see also State v. Dixon,* 893 S.W.2d 286, 288 (Tex. App.--Texarkana 1995, no pet.) (trial court did not abuse its discretion in granting new trial in interest of justice); *State v. Lyons,* 820 S.W.2d 46, 48 (Tex. App.--Fort Worth 1991, no pet.) (trial court retains discretion to grant new trial in the interest of justice, apparently on any ground justice requires).

Appellant joined the United States Air Force in March 2009 and was honorably discharged in March 2013. (CR 98-100, 113; Appendix E, G). During his time in the service, he trained as a military police officer and received several commendations, including the Good Conduct Medal, the Global War on Terrorism Expeditionary

Medal, the Longevity Service Award, and the Air Force Training Ribbon. (CR 98-100, 113; Appendix E, G).

In 2011, appellant was deployed to Iraq. (CR 98-100; Appendix E). Prior to this, he had never traveled outside of the country. (CR 98-100; Appendix E). During his nearly six months in Iraq, appellant worked security for a base in an extremely dangerous and volatile region. (CR 98-100; Appendix E). He describes his time as on a constant state of alert. (CR 98-100; Appendix E). The base was mortared, on average, three times a week. (CR 98-100; Appendix E). Appellant saw people die and feels that he had to "get used to it." (CR 98-100; Appendix E). He returned to San Antonio during the summer of 2011, and attempted to reintegrate himself back into society. (CR 98-100; Appendix E).

Shortly after returning home, appellant began experiencing severe anxiety and anger. (CR 98-100; Appendix E). Not knowing why he was having these feelings, appellant did not seek help. (CR 98-100; Appendix E). There is a stigma in the military of weakness if you complain of service-related difficulties. (CR 98-100; Appendix E). Appellant's feelings of anxiety, anger, and depression progressed to the point that he no longer enjoyed being in public or around other people. (CR 98-100; Appendix E). He was honorably discharged from the service in March 2013. (CR 98-100, 113; Appendix E, G).

Appellant's anxiety in public prevented him from holding down steady employment. (CR 98-100; Appendix E). When appellant would get in situations

20

where several people would be present, he would experience sweating, tunnel vision, locked joints, and shaking. (CR 98-100; Appendix E). He would then become angry at himself for feeling this way. (CR 98-100; Appendix E). In order to cope, appellant began self-medicating with alcohol and marijuana. (CR 98-100; Appendix E). Prior to committing the offenses, appellant engaged in drinking alcohol and smoking marijuana with the co-defendants. (CR 98-100; Appendix E).

Immediately upon the appellant's release on bond, he reported for treatment in Atlanta, as directed by the trial court. (CR 98-100; Appendix E). On February 21, 2014, appellant was diagnosed with "sub-threshold Post Traumatic Stress Disorder and PTSD." (CR 115-118; Appendix H). Appellant was also referred to a counselor for help with his depression and anxiety. (CR 115-118; Appendix H). Although helpful, appellant's symptoms continued to progress. (CR 115-118; Appendix H). As a result, he was accepted into the Trauma Recovery Program on August 1, 2014. (CR 115-118; Appendix H). Appellant was scheduled to begin a psychoeducational and treatment group on September 26, 2014. (CR 115-118; Appendix H).

On September 2, 2014, Dr. Belinda McIntosh, a staff psychiatrist at the Atlanta VA Medical Center, confirmed appellant's PTSD and Major Depressive Disorder diagnoses. (CR 115-118; Appendix H). The doctor adjusted appellant's medication and scheduled a follow-up appointment. (CR 115-118; Appendix H).

The doctor confirms that studies establish that combat veterans with PTSD "exhibit high rates of comorbidity with substance use disorders," and that this "can

21

exacerbate underlying symptoms." (CR 115-118; Appendix H). Additionally, these same veterans may also engage in impulsive and reckless behavior. (CR 115-118; Appendix H). The behavioral changes in appellant after his deployment are consistent with the pattern of behavior exhibited by some veterans with PTSD. (CR 115-118; Appendix H).

Dr. McIntosh, after close contact with appellant and his family, feels that appellant's mental illnesses are highly treatable. (CR 115-118; Appendix H). She feels that appellant is highly motivated to get help and has the family support system to ensure a good prognosis for recovery. (CR 115-118; Appendix H). However, should he be prevented from receiving treatment and medications, his prognosis is "rather grim." (CR 115-118; Appendix H). The doctor also believes that "incarceration will lead to a poor outcome" for appellant. (CR 115-118; Appendix H).

Dr. McIntosh's opinion is newly discovered evidence that likely would have had an impact on appellant's sentence. To obtain a new trial based on newly discovered evidence, appellant is required to show: (1) the evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial. *Keeter v. State,* 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002); TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2010).

Appellant did not know the source of his anger and depression prior to committing the offense. Appellant pled guilty to the two counts of aggravated robbery within six weeks of the offense. Eight weeks later, the court conducted a sentencing hearing. During the time between the pleas and the hearing, the court appointed Dr. Ferrell to assist the defense. The doctor met briefly with appellant and had him submit to testing. (RR II 24). The doctor's testimony consisted of six pages in the record. (RR II 23-28). He was not asked to detail the experiences appellant endured in Iraq and how it affected his life back in the United States. The doctor briefly discussed the symptoms associated with PTSD, but did not expound on appellant's specific symptoms and detail how long he had suffered from his affliction. It was not until appellant received treatment from a hospital that specializes in issues unique to veterans that it was learned the extent of appellant's PTSD.

Appellant's failure to discover this new evidence was not due to a lack of diligence, but by the mental illness itself. Appellant suffered from PTSD for months prior to the offense but did not have the tools to understand why he was experiencing this and seek treatment. This new evidence would have been admissible at appellant's sentencing hearing and was not cumulative of Dr. Ferrell's testimony. The doctor was unable to provide the court with a complete picture of appellant's PTSD because he was not appellant's treating physician and he did not spend a meaningful amount of time with appellant.

————◆————

23

The trial court abused its discretion in allowing appellant's motion for new trial to be overruled by operation of law. The record establishes that the State did not substantiate appellant's plea in accordance with article 1.15 of the Texas Penal Code. Additionally, the evidence does not support the trial court's affirmative finding of a deadly weapon. Finally, appellant was entitled to a new trial on punishment due to newly discovered evidence regarding his PTSD. Appellant requests that his conviction for aggravated robbery be reversed or reformed to robbery and his sentence vacated. Appellant also requests that the cause be remanded and appellant be granted a new punishment hearing.

## CONCLUSION

Appellant respectfully urges this Court to sustain appellant's points of error, and reform appellant's conviction to robbery and remand for a new trial as to punishment.

/S/MANDY MILLER
Attorney for Matthew Douglas Hayes
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846
mandy@mandymillerlegal.com

24

## CERTIFICATE OF COMPLIANCE

In accordance with the Texas Rules of Appellate Procedure, I hereby certify that appellant's supplemental brief, filed on February 11, 2015, has 5,572 words based upon a word count under MS Word.

/S/MANDY MILLER
Attorney for Matthew Douglas Hayes
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846
mandy@mandymillerlegal.com

## CERTIFICATE OF SERVICE

Appellant has mailed a copy of the foregoing instrument to counsel for the

State of Texas at the following address:

Rico Valdez
Bexar County District Attorney's Office
101 W. Nueva, Fl. 4
San Antonio, Texas 78205

/s/**MANDY MILLER**
Attorney for Matthew Douglas Hayes
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846
mandy@mandymillerlegal.com

Date:  March 20, 2015