**AFFIRM; and Opinion Filed October 29, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01029-CR

### COREY LEE HOBBS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 265th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-0959386-R

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Bridges

Appellant Corey Lee Hobbs pleaded not guilty to possession with intent to deliver cocaine and using or exhibiting a firearm during the commission of the offense. The trial court found him guilty and sentenced him to five years' imprisonment. On appeal, he challenges the sufficiency of the evidence to support his conviction and the sufficiency of the evidence to support the affirmative finding he used or exhibited a deadly weapon during the commission of the offense. We affirm the trial court's judgment.

### Background

Detective Joseph Allen, a member of the narcotics unit with the Dallas Police Department, received complaints about foot traffic at 4815 Denley Drive in Dallas, Texas. The location was a suspected drug house.

On July 29, 2009, Detective Allen, along with other officers, conducted covert surveillance of the house and observed several individuals walking straight to the front door, entering the house for a short time, and then leaving. Such behavior was indicative of drug sales.

Officers eventually approached two individuals after they left the home and found them in possession of cocaine. The individuals confirmed purchasing drugs from the Denley house. Officers conducted further surveillance on July 30 and observed more foot traffic. Officers also observed a large black male, approximately 6'6" in height and weighing 290 pounds, standing on the front porch of the house and waving away a suspected narcotics buyer.

Detective Allen then drafted a search warrant, which was executed on July 31 with the help of Dallas SWAT. During Detective Allen's preliminary drive-by with SWAT, he observed a large black male in the doorway conducting what appeared to be a hand-to-hand transaction with another person. However, when officers searched the home a few hours later, it was empty.

During the search, Detective Timothy Falk observed a camera on the front side of the house. Inside the master bedroom, a television carried the live video feed from the front door. Detective Allen and Detective Falk both explained this setup was typical to warn drug dealers of impending problems such as police presence or a potential robber. Also inside the master bedroom, Officer Tyrone Wall found a semi-automatic rim fire Mossberg rifle inside a plastic case and a handgun on top of the dresser just beneath the flat panel television screen. Both guns were in working order. A box of ammunition was on the floor beneath the bed. Also on the dresser near the handgun, officers found a half-gallon sized Ziploc baggie containing marijuana. Detective Allen explained it was common for drug dealers to keep guns in their residence for protection.

Inside the front door on top of a shelf, Officer Matt Banes found a large piece of crack cocaine, a scale, and a razor blade on a ceramic plate. A latent fingerprint lifted from the

ceramic plate matched Hobbs. In a small hallway niche, officers found a piece of wood with the name "Corey" written on it. In the kitchen, officers also found a uniform badge with the name "C. Hobbs."

In the house officers found mail addressed to Hobbs. A black safe found in the master bedroom had the following documents addressed to Hobbs at the Denley address: (1) a court order establishing a parent-child relationship, dated February 23, 2006, (2) a payroll stub from Dallas Independent School District, dated December 26, 2008, and (3) a letter from the Texas Workforce Commission, dated July 27, 2009. Except for the letter from the Texas Workforce Commission, all other documents found in the safe predated the search by approximately eight months. Also found was mail addressed to Hobbs at another home in Dallas and an apartment in Arlington.

Based on information gathered during the search, Detective Allen ran "Corey L. Hobbs" through the Dallas County Automated Identification System. He found a previous arrest record with a mug shot. After comparing the mug shot to the pictures found inside the Denley home, he determined he was looking for the same Corey L. Hobbs. His primary address was listed as 2814 Wilhurt in Dallas, Texas, which matched a document found inside the master bedroom safe.

Hobbs's mother, Thelma, testified in his defense. She testified Hobbs moved out of the Denley house in March 2009 after he lost his job and moved in with her at the Wilhurt address. After Hobbs moved out of the Denley home, her nephew, Michael Scott, moved in. Although she admitted to never meeting Scott, she had seen him and described him as "tall," "heavyset," and maybe "just a touch bigger than Corey." However, when Hobbs's girlfriend was asked if Scott was a pretty big guy, she said, "No, not - - not that big."

When asked about Scott's current location, Thelma explained he passed away "around like about April or May, about June, July" of 2009. When pressed further about his death, she said he probably died before July 31, 2009. On redirect, defense counsel asked if it was possible he died in August 2009, and she answered, "He could have."

Hobbs moved out of his mother's house in April 2009 and moved into his girlfriend's apartment in Arlington. Thelma acknowledged Hobbs returned to the Denley house on occasion to collect rent from Scott. However, she did not have any knowledge of Hobbs owning guns or being involved in criminal activity.

Hobbs testified in his own defense. He admitted leaving personal belongings in the Denley house when he moved out because he did not have anywhere to store them. He denied owning any guns. He knew Scott had guns because he was an avid hunter, but Hobbs never saw Scott with guns. He testified Scott died of an accidental gunshot wound in August 2009.

Hobbs explained he used the Denley address when he filed for unemployment with the Texas Workforce Commission because he had no other address to use. He denied knowledge of any drug activity in the Denley house, and he never saw any suspicious activity when he picked up the rent. He claimed he left the safe with his personal documents at the Denley house because it was safer at that location, and it was easier for him to open mail and file it away. He testified he was not surprised his fingerprint was lifted from the ceramic plate because he unpacked the house after moving in so he touched all the plates while putting them in the curio cabinet.

At the end of the bench trial, the trial court found Hobbs guilty of possession with intent to deliver cocaine and using or exhibiting a firearm during the commission of the offense. The court sentenced him to five years' imprisonment. This appeal followed.

**Sufficiency of the Evidence to Support Conviction for Unlawful Possession With Intent to Deliver**

In his first issue, Hobbs argues the evidence is legally insufficient to support his conviction for unlawful possession with intent to deliver because the State failed to establish affirmative links between him and the contraband. He specifically argues (1) he did not have exclusive custody and control of the house where the cocaine was found; (2) he was not present at the house when officers executed a search warrant; (3) the narcotics were not in plain view; and (4) he was not in proximity of the drugs. The State responds the evidence is legally sufficient to support his conviction.

In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury, as the sole judge of witness credibility, is free to believe or disbelieve all or part of a witness's testimony. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To prove possession with intent to deliver a controlled substance, the State must show a defendant (1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew that the substance in his possession was a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010); *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Mere presence at the location where drugs are found is insufficient, by itself, to establish care, custody, or control of drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Therefore, when a defendant is not in exclusive possession of the place where the controlled

–5–

substance is found, the State must prove additional facts and circumstances that affirmatively link the defendant to the contraband in such a way that it can be concluded that the defendant had knowledge of the contraband and exercised control over it. *Parker*, 192 S.W.3d at 805. Affirmative links are established when the evidence, direct or indirect, shows that the accused's connection with the drug was "more than just fortuitous." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

In determining whether sufficient affirmative links exist, we examine factors such as (1) whether the defendant was present when the drugs were found; (2) whether the drugs were in plain view; (3) whether the drugs were found in proximity to and accessible to the defendant; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband or drug paraphernalia; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether the defendant owned or had the right to possess the place where the drugs were found; (11) whether the place the drugs were found was enclosed; (12) the amount of drugs found; (13) whether the defendant possessed weapons; and (14) whether the defendant possessed a large amount of cash. *Wingfield v. State*, 197 S.W.3d 922, 927 (Tex. App.—Dallas 2006, no pet.). There is no set formula of facts that dictates a finding of affirmative links sufficient to support an inference of knowing possession of contraband. *Id.* Instead, it is the logical force or degree of factors, not the number of factors present, which tends to affirmatively link the defendant to the contraband. *Id.*

Viewed in the light most favorable to the verdict, the evidence shows officers saw a man matching Hobbs' description the day before, and the day of, execution of the search warrant. Detective Allen testified the basketball jersey Hobbs wore in his mugshot pulled from the Dallas County Automated Identification System appeared to be the same jersey he saw the man wearing

on the front porch during his surveillance of the Denley home. Thus, although Hobbs was absent from the house when officers conducted the search, a reasonable fact-finder could determine officers observed Hobbs during the days preceding the search.

While we agree the cocaine was perhaps not in plain sight for the officers conducting the search, the evidence showed Hobbs was approximately 6'6," and therefore, it was likely easily accessible for him. Moreover, the drugs and related paraphernalia were on top of the cabinet located beside the front door making it easier to facilitate the quick foot traffic that officers observed coming and going from the home.

Despite Hobbs's attempts to argue Scott had control of the house at the time the search occurred, the court heard evidence that suggested Scott was not as large as Hobbs and that he likely died before the search occurred. Moreover, none of Scott's personal belongings were found in the house.

On the other hand, the house was full of Hobbs's personal items, including a piece of wood in the hallway niche with the name "Corey" written on it and a uniform badge with the name "C. Hobbs" in the kitchen. A safe containing documents addressed to Hobbs at the Denley home was found inside the master bedroom. One piece of mail addressed to him was dated four days before officers executed the search warrant, which indicated Hobbs had recently been to the house and likely during the time officers were conducting surveillance. Thus, the logical force of the evidence affirmatively linked Hobbs to the drugs, and the connection was "more than just fortuitous." *See, e.g., Poindexter*, 153 S.W.3d at 406, 411 (finding that photograph of defendant and utility bill addressed to him inside home provided evidence he lived there when drugs were found); *see also Davis v. State*, 05-14-00378-CR, 2015 WL 1542211, at *4 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (mem. op., not designated for publication) (reasonable juror could conclude defendant possessed drugs when headboard with defendant's name on it was in

bedroom where drugs were found and officers found mail addressed to defendant in home). Thus, the evidence was legally sufficient to support his conviction for possession of a controlled substance with intent to deliver. We overrule Hobbs' first issue.

**Sufficiency of the Evidence to Support a Special Finding Hobbs Used a Deadly Weapon During Commission of the Offense[1]**

In his second issue, Hobbs challenges the trial court's finding he used a deadly weapon during the commission of the offense. His entire argument rests on the fact the police failed to run the registration on the guns to determine ownership, and it was equally as likely the guns belonged to his cousin or another occupant of the house.

As noted above, we view all the evidence in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. When considering whether the evidence is sufficient to support an affirmative - finding Hobbs used a deadly weapon during the commission of the offense, the question is whether a rational tier of fact could find beyond a reasonable doubt that the mere possession of firearms facilitated the associated crime. *Gale v. State*, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). "Use" can mean "any employment of a deadly weapon, even simple possession, if such possession facilitated" the associated crime. *Patterson*, 769 S.W.2d at 941. Further, a defendant's proximity to the guns at the time of the search is not dispositive. *Coleman v. State*, 145 S.W.3d 649, 653 (Tex. Crim. App. 2004) (affirming deadly weapon finding when police discovered firearms in close proximity to contraband and not close proximity to defendant). Rather, the "cumulative effect" of the evidence may allow a rational trier of fact to determine the defendant used a deadly weapon to facilitate an offense. *Id*. at 655.

---

[1] Although the indictment charged him using or exhibiting a deadly weapon, it is undisputed the only issue is whether he used a deadly weapon during commission of the offense.

The Texas Court of Criminal Appeals has noted two theories courts have applied when considering if a defendant "used" a gun despite his absence at the time of a search. *See Plummer v. State*, 410 S.W.3d 855, 859 (Tex. Crim. App. 2013). The "drug fortress theory" acknowledges that firearms stored at a drug-manufacturing or distribution location might be used to defend against police or thieves. *Id*. The "more than strategic proximity theory" requires an evidentiary connection between the guns and drugs to establish that the guns facilitated or could have facilitated the drug trafficking offense. *Id*. Both theories, however, recognize that drug dealers frequently use guns to protect themselves and their merchandise. *Id*.

Viewing the evidence in the light most favorable to the special finding, a reasonable factfinder could have determined Hobbs used the weapons to facilitate the offense. Although the weapons were not found near the cocaine, the handgun was found near other drugs and next to the television providing a live video stream of the front door. It was reasonable for the factfinder to conclude the gun's proximity to other drugs provided easy access to the owner to protect the contraband from potential thieves. Detective Allen also explained it was common for drug dealers to keep guns in their residence for protection. *See Andrada v. State*, No. 07-13-00278-CR, 2015 WL 1221504, at *3 (Tex. App.—Amarillo Mar. 16, 2015, pet. ref'd) (mem. op., not designated for publication) (jury could believe defendant used firearm to facilitate offense when officer testified a person dealing narcotics might possess a gun to protect the drugs). Moreover, both guns were in working order.

The factfinder was free to reject Hobbs' explanation that the weapons belonged to Scott. And, the officers' failure to run the - registration of the guns to determine ownership is not determinative when other factors weigh in favor of the State. *See Coleman*, 145 S.W.3d at 651, 655 (despite no evidence that gun was registered to defendant and defendant was not present inside house when officers found weapons, a reasonable juror could determine defendant used a

deadly weapon during the commission of a drug offense).  Accordingly, the cumulative force of the evidence establishes Hobbs "used" a deadly weapon to facilitate the delivery of drugs.  We overrule his second issue.

## Conclusion

Having overruled Hobbs' issues, we affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

141029F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

COREY LEE HOBBS, Appellant

No. 05-14-01029-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-0959386-R.
Opinion delivered by Justice Bridges.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of October, 2015.