**Opinion filed May 12, 2016**



## In The

# Eleventh Court of Appeals

_____

## No. 11-14-00145-CR

_____

## KENDALL JEROME WOODS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CR13995**

## M E M O R A N D U M   O P I N I O N

Kendall Jerome Woods appeals his jury conviction for engaging in organized criminal activity. *See* TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2015). The jury assessed his punishment at confinement for a term of thirty-five years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. In three issues on appeal, Appellant asserts that (1) the trial court erred when it admitted statements made by an accomplice to the police, (2) the trial court erred when it allowed a police officer to testify as an expert on deadly weapons, and

(3) the evidence is insufficient to support the jury's finding that Appellant used or exhibited a deadly weapon during the commission of the offense. We affirm.

*Background Facts*

Beginning on March 17, 2013, three individuals committed a string of four robberies in Erath County. There were three suspects to the robberies: Appellant, Davion Thompson, and Brittany Pinson. Multiple officers interviewed Thompson and Pinson. Officers also interviewed Appellant, who confessed to his involvement in the four robberies and stated that Thompson and Pinson also participated in the robberies. Appellant also acknowledged that he and Thompson used pellet guns during the robberies. He disclosed the location of one of the pellet guns to the officers. The first pellet gun was recovered at Appellant's grandfather's house. Appellant told the officers to ask Pinson for the location of the second pellet gun.

Texas Ranger Danny Briley and Stephenville Police Lieutenant Don Miller interviewed Pinson. Investigator Orlando Gaitan of the Stephenville Police Department testified that Pinson disclosed to Ranger Briley and Lieutenant Miller that the second pellet gun had been discarded in a roadside ditch. Sergeant Paula Claunch of the Stephenville Police Department testified that she was assigned the task of driving Pinson out to locate the second pellet gun. The second pellet gun was recovered with Pinson's assistance. Both pellet guns were entered into evidence.

*Analysis*

We first address Appellant's sufficiency challenge set out in his third issue. Appellant challenges the sufficiency of the evidence supporting the jury's affirmative finding to a special issue inquiring if he "used or exhibited a deadly weapon, to-wit: a pellet gun, during the commission of said offense." A deadly weapon finding can be made if a deadly weapon "was used or exhibited during the commission of a felony offense or during immediate flight therefrom." TEX. CODE

2

CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2015). The deadly weapon finding is important because it affects a defendant's eligibility for parole. *See Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004). If a deadly weapon finding is erroneous, the proper remedy is deletion of the finding from the judgment. *See Plummer v. State*, 410 S.W.3d 855, 856 (Tex. Crim. App. 2013); *Williams v. State*, 970 S.W.2d 566 (Tex. Crim. App. 1998).

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When the standard is applied to the special issue regarding the use or exhibition of a deadly weapon during the commission of a felony offense, the question facing this court is whether a rational trier of fact could have found beyond a reasonable doubt that Appellant used or exhibited a deadly weapon to facilitate engaging in organized criminal activity. *See Coleman*, 145 S.W.3d at 652; *Gale v. State*, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999). When conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Appellant contends that the evidence is insufficient because the evidence of "the manner and use of the pellet gun" does not show it was used as a deadly weapon. He contends that the evidence was insufficient because there was no evidence that he verbally threatened a victim, pointed a pellet gun at a victim's face, or used a

pellet gun as a blunt object. Appellant cites *Delgado v. State*, 986 S.W.2d 306, 308 (Tex. App.—Austin 1999, no pet.), to support his analysis. We conclude that the analysis in *Delgado* is not controlling.

The Penal Code defines a deadly weapon as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2015). At the time that *Delgado* was decided, Texas courts appeared to require evidence that a pellet or BB gun was loaded at the time of its use. 986 S.W.2d at 307–08 (citing *Holder v. State*, 837 S.W.2d 802, 807–09 (Tex. App.—Austin 1992, pet. ref'd)). The Austin court recognized in *Delgado* that proving a pellet gun was loaded during a robbery could be difficult. *Id.* at 308. The court held that a rational jury could infer that a pellet gun was loaded when the actor pointed the pellet gun at the heads of the robbery victims and threatened to kill them. *Id.* at 308. The Austin court also held that verbal threats that the defendant intended to strike a robbery victim, together with evidence that the pellet gun's size and weight made it capable of causing serious bodily injury if used as a club, could support a rational jury finding that the defendant intended to use the pellet gun as a deadly club or bludgeon. *Id.* at 309.

In *Adame v. State*, the Court of Criminal Appeals agreed with *Delgado* that a jury may rationally infer that a pellet gun is loaded when a defendant points the pellet gun at someone and threatens serious bodily injury. *Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002). However, the court held in *Adame* that "[i]t is not necessary, however, to place an additional evidentiary burden on the State to affirmatively prove that a BB gun, which is not a deadly weapon per se, was loaded at the time of the commission of the offense." *Id.* "[I]n proving use of a deadly weapon other than a deadly weapon per se, the State need show only that the weapon

4

used was capable of causing serious bodily injury or death in its use or intended use." *Id.* The court held that evidence of whether or not a BB gun used in a convenience store robbery was loaded was not significant to a deadly weapon analysis. *Id.* Thus, the relevant inquiry is the gun's capability rather than its actual performance. Accordingly, whether Appellant verbally threatened or pointed a pellet gun at a victim's face is not necessary to our analysis of whether the pellet gun was a deadly weapon in the manner of its use or intended use. *See id.*

Sergeant Sha King of the Stephenville Police Department testified that, based on the barrel velocity of the pellet guns used in the robberies and how far the pellets could penetrate ballistics gelatin, he had determined that the guns could cause serious bodily injury or death if they were discharged at close range at someone's face or eye area or the back of someone's head. "With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding." *Adame*, 69 S.W.3d at 582. Based on Sergeant King's testimony, a rational factfinder could conclude beyond a reasonable doubt that the pellet guns were capable of causing serious bodily injury or death.

In *Patterson v. State*, the Texas Court of Criminal Appeals held that, to "exhibit" a deadly weapon, a defendant need only to have consciously displayed it during the commission of the felony offense. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). In *Plummer v. State*, the court further explained that, for violent offenses, the verb "exhibits" implicitly contains an element of "facilitation"; thus, one can "exhibit," or consciously display, a deadly weapon without overtly using it to harm or threaten another if its intimidation value assists in the commission of the felony. *Plummer*, 410 S.W.3d at 862. In this instance, the deadly weapon facilitates the associated felony because it provides "intimidation value that assists the commission of the felony." *Id.*

5

In *McCain v. State*, the Texas Court of Criminal Appeals held that a butcher knife had been used or exhibited during a robbery and explained:

> Had the knife been completely concealed by appellant's clothing, additional facts would have been needed to establish that the butcher knife was used. But the knife was partially exposed, and from that exposure, the factfinder could rationally conclude that the knife was exhibited during the criminal transaction, or at least, that its presence was used by appellant to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter.

*McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Appellant acknowledges in his brief that "[b]oth men were banging the counter with the pellet guns and asking for the money." We conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant used or exhibited a deadly weapon to facilitate engaging in organized criminal activity. We overrule Appellant's third issue.

Appellant asserts in his first issue that the trial court erred in allowing the hearsay statements of an accomplice into evidence under Rule 803(24) of the Texas Rules of Evidence and by violating the Confrontation Clause of the Sixth Amendment. The prosecutor asked Investigator Gaitan if an interview with either Pinson or Thompson led to the recovery of one of the pellet guns used in the robberies. Appellant objected to the question on the ground that its response called for hearsay. Outside the presence of the jury, the trial court considered Rule 803(24) and determined that Pinson's statements to officers regarding the location of one of the pellet guns were admissible as statements against interest. *See* TEX. R. EVID. 803(24). During the course of the hearing, Investigator Gaitan stated that Pinson made the statements to other officers rather than directly to him. Appellant made an additional hearsay objection to the effect that the statements constituted double

6

hearsay because Investigator Gaitan was testifying as to what he learned from officers who interviewed Pinson. The trial court overruled this objection.

We note at the outset that the record does not reflect that Appellant made an objection under the Confrontation Clause[1] to Investigator Gaitan's testimony. Appellant contends that he made a Confrontation Clause objection during an unrecorded bench conference that preceded the hearing on Rule 803(24). He supports this contention by referencing a subsequent argument he offered during the punishment phase of trial wherein defense counsel lodged a Confrontation Clause objection and stated, "I know we had an argument about it," apparently referencing the earlier arguments concerning Investigator Gaitan's testimony. We disagree that this subsequent reference indicates that Appellant made an earlier objection under the Confrontation Clause. The parties and the trial court extensively discussed the admissibility of the testimony under Rule 803(24), but there is no reference to the Confrontation Clause.

The Rules of Appellate Procedure provide that, "[a]s a prerequisite to presenting a complaint for appellate review, *the record must show* that . . . the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1) (emphasis added). An objection made during an unrecorded bench conference does not preserve error. *Hullaby v. State*, 911 S.W.2d 921, 926 (Tex. App.—Fort Worth 1995, pet. ref'd); *Wallace v. State*, 822 S.W.2d 290, 293 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). Accordingly, Appellant has not preserved an objection under the Confrontation Clause for appellate review.

Alternatively, Appellant asks us to essentially overrule the holding by the Court of Criminal Appeals in *Holland v. State* that a hearsay objection alone does

---

[1]The Confrontation Clause bars the admission of out-of-court testimonial statements of a witness unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Render v. State*, 347 S.W.3d 905, 917 (Tex. App.—Eastland 2011, pet. ref'd).

7

not preserve error on the basis of the Confrontation Clause. *See Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991). As an intermediate appellate court, we must follow the binding precedent of the Court of Criminal Appeals. *Gonzales v. State*, 190 S.W.3d 125, 130 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet ref'd) (citing *Southwick v. State*, 701 S.W.2d 927, 929 (Tex. App.—Houston [1st Dist.] 1985, no pet.)). Therefore, we must decline Appellant's request.

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). As Investigator Gaitan's testimony potentially involves two layers of hearsay, we will first address Pinson's statements to the interviewing officers, and then we will address the officers' statements to Investigator Gaitan, relaying what they had learned from Pinson.

Hearsay is a statement that the declarant does not make while testifying at trial that is offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d); *see Tienda v. State*, 479 S.W.3d 863, 874 (Tex. App.—Eastland 2015, no pet.). Hearsay is inadmissible except as provided by statute or the Rules of Evidence. TEX. R. EVID. 802; *see Tienda*, 479 S.W.3d at 874.

An exception to the hearsay rule allows the admission of statements made against the declarant's interest. TEX. R. EVID. 803(24). This exception permits the admission of a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace; and

8

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

*Id.* The rationale behind admitting these types of statements "stems from the commonsense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true." *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008) (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)). "[A] reasonable person would not normally claim that he committed a crime, unless it were true." *Id.* (citing *United States v. Watson*, 525 F.3d 583, 586 (7th Cir. 2008)). Rule 803(24) sets out a two-step foundation requirement for the admissibility of hearsay statements against a person's penal interest. *Id.* (citing *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999)). The trial court must first determine whether the statements, considering all of the circumstances, subject the declarant to criminal liability and whether the declarant realized this when he made the statements. *Id.* at 890–91. The trial court must then determine whether sufficient corroborating circumstances exist that clearly indicate the trustworthiness of the statements. *Id.* at 891 (citing *Dewberry*, 4 S.W.3d at 751).

Statements against penal interest can inculpate both the declarant and a third party, such as a codefendant. *Dewberry*, 4 S.W.3d at 751. "An admission against a co-defendant declarant's interest can be admissible against the defendant so long as it is sufficiently against the declarant's interest to be reliable." *Id.* (citing *Williamson*, 512 U.S. at 603). Pinson's statements to Ranger Briley, Lieutenant Miller, and Sergeant Claunch, as to the location of the gun, subjected Pinson to criminal liability because the statements verified Pinson's participation in the robbery and led to the recovery of evidence that could be used against her. Pinson made the statements to three officers and undoubtedly knew, as would the

9

"average reasonable person," that speaking to them about her involvement in a string of robberies would expose her to criminal liability. *Walter*, 267 S.W.3d at 898.

Furthermore, there must be sufficient corroborating circumstances that clearly indicate the trustworthiness of the statements. *Dewberry*, 4 S.W.3d at 751. A trial court should consider the following factors: (1) whether guilt of declarant is inconsistent with guilt of the defendant, (2) whether declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement is made, and (6) the existence of independent corroborative facts. *Id.* (citing *Davis v. State*, 872 S.W.2d 743, 749 (Tex. Crim. App. 1994)).

The evidence at trial showed that Pinson's statements bore the necessary indicia of trustworthiness. First, Pinson's guilt was not inconsistent with Appellant's guilt. Her statements about the location of the gun implicated her as a party in the same string of robberies that Appellant was charged with committing. Second, a Crime Stoppers' tip indicated that Pinson's black Mustang had been used in the robberies. Third, Pinson made the statements when she was detained for investigation only a few days after the first robbery. This weighs in favor of trustworthiness. The fourth factor of "spontaneity" weighs neither in favor of nor against trustworthiness. There is no evidence that Pinson was under the stress or dominating influence of a startling event but, rather, had requested an attorney and was no longer the subject of questioning when she decided to initiate a conversation with two other officers. The fifth factor weighs in favor of trustworthiness because the relationship between the declarant and the person to whom the statement was given was that of a suspect in custody admitting guilt to an investigating officer. *See James v. State*, 102 S.W.3d 162, 177 (Tex. App.—Fort Worth 2003, pet. ref'd).

10

Additionally, the State developed independent corroborative facts when it recovered the pellet gun that was the subject of Pinson's statement. The police recovered articles of clothing from Pinson's car that were worn during the robberies. Further, Appellant acknowledged that he participated in the string of robberies with Pinson and that she knew the location of the second gun. We conclude that the independent corroborative facts, plus evidence demonstrating the other *Dewberry*/*Davis* factors, indicate that Pinson's statements were trustworthy under Rule 803(24). Therefore, the trial court did not abuse its discretion in overruling Appellant's hearsay objection because Pinson's statements were admissible under Rule 803(24).

We must now address the admissibility of Investigator Gaitan's testimony from the perspective that Pinson did not make the statements directly to him but, rather, to other officers. Even if we assume that the statements constituted double hearsay,[2] the admission of Pinson's statements through Investigator Gaitan did not constitute reversible error. The improper admission of hearsay evidence "does not constitute reversible error if the same facts are proved by other, properly admitted evidence." *Maranda v. State*, 253 S.W.3d 762, 769 (Tex. App.—Amarillo 2007, pet. dism'd) (citing *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).

Appellant objected to Investigator Gaitan testifying that Pinson told other officers where the second pellet gun could be found. Sergeant Claunch testified that Pinson rode with her to locate the second pellet gun, which had been discarded and which was found in the area where Pinson directed the officers to look for it. Thus,

---

[2]In addressing a hearsay issue in *Tienda*, we noted that a police officer should be allowed to testify generally as to the reasons for his behavior, his presence, and his conduct so that his involvement does not appear to have been simply by happenstance. 479 S.W.3d at 879 (citing *Schaffer v. State*, 777 S.W.2d 111, 114–15 (Tex. Crim. App. 1989)).

the same fact that Investigator Gaitan testified to was established by other, properly admitted evidence. We overrule Appellant's first issue.

In his second issue, Appellant asserts that the trial court erred when it allowed Sergeant King to testify as an expert on deadly weapons concerning the pellet guns that were recovered. We review a trial court's determination that a witness is qualified as an expert and its ruling on the admission of expert testimony for an abuse of discretion. *Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006). "Absent a clear abuse of that discretion," we will not disturb the trial court's decision to admit or exclude testimony. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). We review the trial court's ruling in light of the evidence before the court at the time of the ruling. *Rodgers v. State*, 205 S.W.3d 525, 528–29 (Tex. Crim. App. 2006).

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. TEX. R. EVID. 702. "The special knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things." *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995). "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers*, 205 S.W.3d at 527–28. To evaluate whether a trial court abused its discretion when it determined that a witness was qualified as an expert, we consider three criteria: (1) Is the field of expertise complex? (2) How conclusive is the expert's opinion? (3) How central is the area of expertise to the resolution of the lawsuit? *Id.* at 528.

Appellant contends that Sergeant King did not have the requisite knowledge of the specific pellet guns used, did not have the requisite knowledge and understanding of the underlying scientific data, and had not testified as an expert on the subject of pellet guns in prior trials and that he, therefore, did not qualify as an expert on pellet guns. We disagree. Expert or lay testimony may be sufficient to support a deadly weapon finding, and police officers can be expert witnesses with respect to whether a deadly weapon was used. *Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008) (citing *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex. Crim. App. 1980)). The Court of Criminal Appeals determined in *Tucker* that "the lengthy experience of both officers, and [a testifying officer's] position in a homicide division in particular, suggests qualification as an expert on whether certain wounds were caused by a deadly weapon." *Id.*

Sergeant King testified that he had worked as a police officer for over nineteen years. He testified that he had served as a defensive tactic training officer. In regard to firearm training, he testified that he was required to qualify with a firearm four times a year, had completed forty hours of training in the police academy, and had completed additional training throughout his career. He testified that he worked for a period of time in the Criminal Investigation Division and investigated crimes that involved the use of deadly weapons. He also testified that he had used pellet guns extensively in the past.

The analysis performed by Sergeant King was relatively simple. Thus, the required degree of education, training, and experience was not extremely high. *See Rodgers*, 205 S.W.3d at 527–28. The trial court could have concluded that Sergeant King's qualifications, including his training and law enforcement experience as well as his personal experience using pellet guns, were sufficient such that his testimony would "help the trier of fact to understand the evidence." TEX. R. EVID. 702. Accordingly, the trial court did not abuse its discretion when it permitted

Sergeant King to testify that the pellet guns were deadly weapons. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


May 12, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14