

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1269-12

**MARQUIS ANDRE PLUMMER, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and ALCALA, JJ., joined. KELLER, P.J., concurred.

O P I N I O N

Appellant was convicted of unlawful possession by a felon of a firearm and possession of body armor. The trial judge entered a deadly-weapon finding in the body-armor case, and the question before us is whether, for purposes of Article 42.12, § 3g, the evidence shows that appellant "exhibited" the firearm in the commission of the offense of

possession of body armor.[1]  The court of appeals upheld the deadly-weapon finding,[2] and we granted review because this case raises an important issue of first impression: To support a deadly-weapon finding, must the "exhibition" of a deadly weapon facilitate, in some manner, the associated felony offense?  Or is it sufficient that the exhibition of the deadly weapon occurs simultaneously with the felony but is unrelated to its commission?

We conclude that there must be some facilitation purpose between the weapon and the associated offense to support a deadly-weapon finding. Because there was no evidence that appellant's possession of a mini-Glock pistol facilitated his commission of the offense of possession of body armor, we delete the deadly weapon finding from the judgment.

## I.

Appellant was charged with unlawful possession of a firearm[3] and unlawful possession of body armor by a felon.[4] He wore both a holstered firearm and a bullet-proof vest as part of his security-guard uniform. Because of a prior felony conviction, he was prohibited from possessing both the firearm and the bullet-proof vest.

The evidence at appellant's bench trial showed that, on March 30, 2010, Houston Police Officer Dannell Sanchez was dispatched to a wellness clinic on Cullen Blvd. to assist

---

[1] Appellant's sole question asks: "Whether a felon working as a security guard exhibited a firearm that remained in its holster while he wore a bullet-proof vest under his T-shirt?"

[2] *Plummer v. State*, __ S.W.3d __, No. 01-11-00279-CR & No. 01-11-00280-CR, 2012 WL 2106546, *4 (Tex. App.–Houston [1st Dist.] June 7, 2012).

[3] TEX. PENAL CODE § 46.04(a).

[4] TEX. PENAL CODE § 46.041.

two Brazoria County deputies in serving a felony arrest warrant on one of the clinic's employees. When Officer Sanchez arrived at the clinic, he met appellant, who was sitting in the lobby, wearing a bullet-proof vest under a black T-shirt with "POLICE" written on it. Appellant seemed very nervous as he asked the officers what was happening. "One of the things that was a red flag for me, he had a Sam Brown or gun belt on and the gun in the holster was a lot smaller than what we would carry as a duty weapon. . . .We call it a mini Glock and that's not a duty weapon."

The officers were unable to find the person for whom they had the arrest warrant, but they began questioning appellant because they thought it odd for the wellness clinic to have a security guard. At first, appellant said he was with Brazoria County, but, when asked for his identification, he gave the officers a Fire Marshal identification card from Prairie View in Waller County. When Officer Sanchez ran appellant's identification, he found that appellant had been convicted of a felony in 2003 and his concealed-handgun license had been revoked. Officer Sanchez's supervisor verified that appellant was, in fact, employed by the Prairie View Fire Department, but he was not a licensed peace officer. The officers also verified that appellant was working as a substitute security guard.

The trial judge found appellant guilty of unlawful possession of a firearm by a felon and unlawful possession of body armor (the bullet-proof vest) by a felon. Referring to our precedent,[5] the trial judge declined to enter a deadly-weapon finding in the possession-of-a-

_____

[5] *See Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992) (deadly-weapon finding impermissible in possession-of-an-illegal-firearm case when evidence showed "mere" possession

firearm-by-a-felon case. He did, however, enter a deadly-weapon finding in the body-armor case.

The court of appeals upheld the deadly-weapon finding, concluding that the simultaneous "display" of a weapon while committing another felony offense (possession of body armor) supported the finding even though the gun did not facilitate the felony offense.[6] We granted review to decide whether the term "exhibit" in the deadly weapon statute carries with it the connotation that the deadly weapon must somehow facilitate or increase the risk of potential harm while committing the felony.

## II.

Article 42.12 § 3g(a)(2) states that offenders who have "used or exhibited [a deadly weapon] during the commission of a felony offense or during immediate flight therefrom" are not eligible for judge-ordered community supervision.[7] A deadly-weapon finding also

---

of that weapon); *Ex parte Petty*, 833 S.W.2d 145, 145-46 (Tex. Crim. App. 1992) (in prosecution for felon in possession of a firearm, a deadly-weapon finding could not be based solely on defendant's possession of that weapon because "the weapon was not 'used' in furtherance of any collateral felony")

[6] *Plummer*, __ S.W.3d at __, 2012 WL 2106546, at *4. The court explained:
Officer Sanchez testified that appellant was carrying a gun when the police approached him. The gun was not hidden, but was displayed in a holster on a gun belt. It was identified as a "mini-glock" handgun. At the time he possessed the gun, appellant was committing the felony of unlawful possession of body armor by a felon–he had a bulletproof vest under his shirt. From this evidence, the trial court could have rationally concluded that appellant consciously displayed, or "exhibited," a deadly weapon while committing the offense of unlawful possession of body armor by a felon.
*Id.*

[7] TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2).

requires an inmate to serve at least one-half of his prison sentence before he is eligible for parole.[8] Thus, a deadly-weapon finding carries with it serious legal consequences.

According to our seminal decision in *Patterson v. State*, the term "'exhibited a deadly weapon' means that the weapon was consciously shown or displayed during the commission of the offense."[9] The actor must be specifically aware of the fact that he was using a deadly weapon during the felony. The term "used a deadly weapon" means that "the deadly weapon was employed or utilized in order to achieve its purpose."[10] Therefore, the actor must use the item or object as a deadly weapon, not for some other purpose.[11] We then explained that "one can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it."[12] Since *Patterson*, we have sometimes considered "exhibit" as a part of, or subset of, "use."[13]

---

[8] TEX. GOV'T CODE § 508.145(d)(1) ("An inmate serving a sentence for an offense . . . for which the judgment contains an affirmative finding under Section 3g(a)(2) of that article . . . is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years.").

[9] 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).

[10] *Id.*

[11] For example, a bookshelf collection of antique guns may contain deadly blunderbusses, but if the weapons are used solely for display purposes, they are not eligible for a deadly-weapon finding under the statute.

[12] *Patterson*, 769 S.W.2d at 941.

[13] In *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004), we stated that "one can 'use' a weapon without exhibiting it, but not vice-versa." *Id.* However, that case involved the "use" of a deadly weapon to protect a drug operation, not the mere exhibition of a deadly weapon. We explained, "Neither side disputes that the weapons at issue in this case were not 'exhibited' within

## A.    The Expansion of Deadly-Weapon Findings

The *Patterson* decision opened the door for expanded interpretations of "use and exhibit a deadly weapon during the commission of a felony."

One expansion is that the term now includes *any* instrument that threatens or causes serious bodily injury, even when the instrument is not inherently or intentionally deadly. In *Tyra v. State*,[14] we held that a car was a deadly weapon during the commission of an involuntary manslaughter.[15] Even though a car is not intended to be a deadly weapon, it can be "used with deadly effect" in the commission of manslaughter.[16] That reasoning was then applied to felony DWIs when no one was actually injured.[17] Based on *Tyra* and the DWI cases, Texas courts have upheld deadly-weapon findings when the object caused the injury or increased the risk of injury during the commission of the felony; these findings  include an uncovered septic tank into which a child fell, the sexual organ of an HIV-positive man

---

the meaning of the article, and we will therefore discuss only whether a rational jury could have found that the weapons were 'used' during the commission of each felony." *Id*.

[14] 897 S.W.2d 796 (Tex. Crim. App. 1995).

[15] *Id*. at 798.

[16] *Id*. at 798-99 ("anything, including a motor vehicle, which is actually used to cause the death of a human being is a deadly weapon").

[17] *Mann v. State*, 58 S.W.3d 132, 132 (Tex. Crim. App. 2001) (DWI defendant nearly swerved into oncoming traffic; although car was not "used with deadly effect," it was a deadly weapon because it nearly caused serious bodily injury.).

who raped a child, and the sedatives that accidentally caused the death of a dental patient.[18]
In each of these cases, as in *Tyra*, the object was found to be a deadly weapon because it caused or facilitated the injury (or risk of injury) posed by the associated felony.

A second expansion of *Patterson* permits deadly-weapon findings when a jury could infer, in the absence of actual harm or threat, that the weapon "facilitated" the associated felony. For example, when a defendant possesses both guns and drugs, a jury may make a deadly-weapon finding even though he did not overtly use or brandish a gun because the weapon reasonably could have "protected and facilitated appellant's care, custody, and management of the contraband."[19]

A third expansion of *Patterson*'s reach permits a deadly-weapon finding even when the weapon is not found on or near the defendant. In *Coleman v. State*,[20] the defendant was handcuffed in a patrol car while police officers searched his house and found a large quantity of drugs in a safe, along with two guns and a large amount of cash.[21] These facts generated a "cumulative effect" sufficient to show that the weapons had facilitated the possession of drugs by protecting them and the profits from their sale.[22] The nature of the illegal drug trade

---

[18] *See Rankin v. State* 46 S.W.3d 899 (Tex. Crim. App. 2001); *Najera v. State* 955 S.W.2d 698 (Tex. App.–Austin 1997, no pet.); *Davis v. State*, 955 S.W.2d 340 (Tex. App.–Fort Worth 1997, pet. ref'd).

[19] *Patterson*, 769 S.W.2d at 941-42.

[20] 145 S.W.3d 649 (Tex. Crim. App. 2004).

[21] *Id*. at 650.

[22] *Id*. at 655.

invites the possibility of violence and encourages drug dealers to carry deadly weapons to protect themselves and their inventory.[23] The "drug fortress theory" supposes that firearms stored at a drug-manufacturing or distribution location might be used to defend against police or thieves.[24] A second theory, the "more than strategic proximity theory," requires an evidentiary connection between the guns and drugs to establish that the guns "facilitated or could have facilitated the drug trafficking offense."[25] Both theories recognize that drug dealers frequently use guns to protect themselves and their merchandise.

## B.    Limitations on Deadly-Weapon Findings

Since *Patterson*, deadly-weapon findings have been upheld when the evidence showed some relationship between the weapon and the associated felony. However, we have declined to uphold deadly-weapon findings when the weapon was present but did not facilitate a separate felony. For example, in *Ex parte Petty*,[26] we held that the offense of possession of a firearm by a felon could not support a deadly-weapon finding because the weapon was not used "to achieve an intended result, namely, the commission of a felony

---

[23] *See* Thomas A. Clare, Note, Smith v. United States *and the Modern Interpretation of 18 U.S.C. § 924(c): A Proposal to Amend the Armed Offender Statute*, 69 NOTRE DAME L. REV 815, 839 (1994); Amy L. Eckert, Note, *Narrow Interpretation of "Use" of a Firearm*, 64 TENN. L. REV. 515, 523-24 (1997).

[24] Eckert, *supra* note 23, at 523-24.

[25] *Id*. at 522.

[26] 833 S.W.2d 145 (Tex. Crim. App. 1992).

offense separate and distinct from 'mere' possession."[27]   Similarly, in *Narron v. State*,[28] we deleted the deadly weapon finding because the short-barreled shotgun was both the subject of the conviction and the basis of the deadly-weapon finding.   The shotgun had not been used to facilitate any other felony.[29]

Conversely, as a part of the *Patterson* expansionary interpretation, we have upheld deadly-weapon findings when the evidence showed that the weapon facilitated the associated felony even though it was not overtly used.  In *McCain v. State*,[30] the evidence showed that the "home invasion" defendant had a long, dark object sticking from his back pocket, which the homeowner-victim thought was a knife.  She was afraid that the defendant would use the knife against her during the aggravated robbery even though he never brandished it in a threatening manner.[31]   We upheld the deadly-weapon finding because "the knife was exhibited during the criminal transaction, or at least, that its presence was used by appellant

---

[27] *Id.* at 145.

[28] 835 S.W.2d 642 (Tex. Crim. App. 1992).

[29] *Id.* at 644.  In *Smith v. State*, 944 S.W.2d 453 (Tex. App.–Houston [14th Dist.] 1997, pet. ref'd), the defendant was charged with carrying a handgun in a liquor mart, a prohibited place.  The court of appeals deleted the deadly-weapon finding because being on a premises licensed to sell alcohol was not an offense in itself, and the handgun was only carried, albeit openly, and never used in a threatening display to protect the possession of a weapon in the liquor store.  *Id.* at 456.

[30] 22 S.W.3d 497 (Tex. Crim. App. 2000).

[31] *Id*. at 499.  The defendant, who kicked in the complainant's kitchen door and began beating her with his fists, was charged with aggravated robbery based on the use or exhibition of a butcher knife.  *See* TEX. PENAL CODE § 29.03(a)(2).  We noted the similarity between the language in that provision and in Article 42.12 § 3g(a)(2) and applied the *Patterson* interpretation of "use and exhibit." *Id.* at 502.

to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter."[32] But the defendant's act of having the knife in his pocket while he committed the felony was not sufficient; "the determining factor is that the deadly weapon was 'used' *in facilitating* the underlying crime."[33]

We have reiterated this "facilitation" requirement in other decisions. In *Whatley v. State*,[34] a solicitation-of-capital-murder prosecution, the defendant had solicited hitmen and provided them with a pistol with which they were to commit the murder.[35] We upheld the deadly-weapon finding because "[a]ny employment of a deadly weapon qualified if it 'facilitates the associated felony.'"[36] Mere exhibition of the pistol supported a deadly-weapon finding only because the pistol facilitated the associated felony by its "persuasive impact . . . [as] a part of the request or the attempt to induce conduct," enhancing the defendant's solicitation request.[37]

---

[32] *Id*. at 503.

[33] *Id*.

[34] 946 S.W.2d 73 (Tex. Crim. App. 1997).

[35] *Id.* at 76.

[36] *Id*.

[37] *Id.*

## C.    Legislative History

Because the "plain language" of Article 42.12, § 3g(a) is ambiguous and does not answer the question of whether the exhibition of a deadly weapon must, in some respect, facilitate the commission of the associated felony, we may consult the legislative history of the statute.[38]   Although the legislative record discussing the specific terms in the deadly-weapon statute is skimpy,[39] the general purpose of the statute is well documented.   One witness testifying before the 1977 Senate subcommittee on the deadly-weapon provision stated that it was "intended to send a message to criminals to leave their firearms at home."[40] All of the discussion during the hearing centered on the commission of dangerous, violent

---

[38] *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991) (noting that when statutory "language is not plain but rather ambiguous," a court may consider extra-textual factors such as legislative history of the statute); *see also Garcia v. State*, 387 S.W.3d 20, 23 (Tex. Crim. App. 2012).

[39] In *Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989), we stated, "Direct reference to the evolution of Art. 42.12 § 3g, . . . through both houses of the Legislature and conference committee sheds no light on what the Legislature intended to be meant by 'used or exhibited a deadly weapon' and tapes of the legislative debates and committee hearings are equally as barren." *See also Polk v. State*, 693 S.W.2d 391, 393 n.1 (Tex. Crim. App. 1985) (noting that the legislative history of SB 152, the bill that was to become section 3 of article 42.12, "is incomplete" and that the intended meaning of specific terms within that legislation "is difficult to educe").

[40] *Tyra v. State*, 897 S.W.2d 796, 802-03 (Tex. Crim. App. 1995) (Maloney, J., concurring). Senator Meier, the 1977 sponsor of Senate Bill 152 which contained the 3g deadly-weapon provision, told the committee,

> [T]he purpose of the bill is to . . . attempt to deter the commission of those crimes by insuring that other provisions of the criminal justice system, such as the calculation of good time credit, and such as the obtaining of probation, and such as the time a person is going to be eligible for parole, are denied the persons who commit those serious offenses in those limited circumstances. That is the purpose of the bill.

*Id.*

felonies, and the use of obvious weaponry, such as guns, grenades, and knives.  The House

sponsor for the bill explained that

> [I]t is a bill . . . that deals with the situation of those people who have been involved with serious criminal acts. Those acts in almost every instance are those that deal with violent crime, the crime that deals with a weapon . . . has intimidated and perhaps injured or killed or maimed some victim. It provides that there will be no probation in certain circumstances in a case dealing with a violent act.[41]

The statute's structure also suggests that the law is intended to deter and punish those

involved in serious violent felonies.  The section immediately preceding the deadly-weapon

provision in Section 3g(a)(2) is the section listing the specific offenses labeled as the "'3g'

offenses."[42]   Almost all of these listed offenses are violent acts involving physical threat or

harm.  Thus, the two "3g" sections enhance punishments for those who commit serious

felony offenses that cause or threaten physical harm or whose use or exhibition of a deadly

weapon during the commission of a felony causes harm or the threat of harm.

In the context of violent offenses, the term "exhibit" contains an implicit element of

facilitation. If one exhibits a deadly weapon–or, in the words of *Patterson*, "consciously

---

[41] *Ex parte Jones*, 957 S.W.2d 849, 851 (Tex. Crim. App. 1997) (citing debate on H.B. 571, 65th Leg. (1977)).

[42] TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(1); *see* Tex. H. Research Org., Bill Analysis, Tex. H.B. 1992, 83rd Leg., R.S. (2013) ("This section contains a list of certain serious and violent crimes that are ineligible to receive judge-ordered community supervision and are often referred to as '3g' offenses").

displays" it[43]–without overtly using it to harm or threaten while committing a felony, the deadly weapon still provides intimidation value that assists the commission of the felony. Conversely, if one commits a nonviolent offense that does not involve harm or the threat of harm, the presence of a deadly weapon does not necessarily further or facilitate the offense.

Other states addressing the scope of deadly-weapon findings have frequently adopted a facilitation requirement to avoid absurd results.[44] The Wisconsin Supreme Court, in a case involving drug possession, adopted an "adequate nexus"[45] requirement that requires the state "to prove the defendant possessed the weapon to facilitate commission of the predicate offense."[46] Similarly, the Oklahoma Court of Criminal Appeals required more than "mere

---

[43] 769 S.W.2d at 941.

[44] *See State v. Peete*, 517 N.W.2d 149, 153 (Wis. 1994). The court explained,
[I]t would be absurd to apply the penalty enhancement statute to situations in which there is no relationship between the offense and possession of a dangerous weapon, regardless of whether that possession is actual or constructive. The state provides the useful illustration of a person who fills out and files a fraudulent tax return while carrying a pistol. The state gives other examples of crimes which could be committed without a relationship between the crime and weapon possession, including forgery while possessing a weapon and fraudulent tapping of utility lines while possessing a weapon. In the absence of a nexus requirement, the state could prosecute a defendant for committing a crime while possessing a dangerous weapon even when the weapon has no connection to the predicate offense.
*Id.*; *see also State v. Petrak*, 8 P.3d 1174, 1178-80 (Ariz. Ct. App. 2000) (interpreting the statutory phrase "knowingly . . . [u]sing or possessing a deadly weapon during the commission of any felony offense" as requiring a nexus between the felony and the weapon; "We find it persuasive that other courts facing similar language have required a nexus between the gun and the crime to avoid absurd results or overbreadth.").

[45] We perceive no distinction between a "facilitation" and a "nexus" requirement, but if there is one, we adhere to our prior precedent discussing a "facilitation" requirement.

[46] *Peete*, 517 N.W.2d. at 154.

possession" of a deadly weapon and looked for a "nexus between the crime charged and possession of a gun."[47]   Recently, the South Carolina Supreme Court  agreed that its legislature, in drafting its weapon enhancement statute, "intended to penalize possession of a firearm only when possession furthers or is intended to further a violent crime."[48] The United States Supreme Court has interpreted the federal statute increasing penalties for using or carrying a firearm during a drug offense as requiring, at a minimum, that "the firearm must

---

[47] *Ott v. State*, 967 P.2d 472, 476 (Okla. Crim. App. 1998).  In considering whether the evidence supports a nexus between the weapon and the associated offense, the court considered whether (1) the weapon was used to actually facilitate the commission of the offense; (2) the weapon was possessed or strategically located to be quickly or easily located for use during the commission of an offense; (3) the weapon was intended to be used if a contingency arose or to make an escape; and (4) the weapon was to be used either offensively or defensively in a manner which would constitute a threat of harm.  The Oklahoma court concluded, as we did in *Patterson*, that the presence of the gun around the area of drug preparation and near the entrances reasonably demonstrated that the gun was "strategically located for use during the sale of the drugs, and could have been used if a contingency arose or to escape."  *Id.*; *see also Petrak*, 8 P.3d at 1180 ("Our weapons misconduct statute requires more than a mere temporal nexus between the weapon and the crime alleged. The thrust of the statute is to deter the use of weapons to facilitate crime. The state must prove that the defendant intended to use or could have used the weapon to further the felony drug offense underlying the weapons misconduct charge."); *People v. Atencio*, 878 P.2d 147, 150 (Colo. Ct. App. 1994) (noting that "the statutory language, 'use, display, possession, or availability for use' are nexus terms. Thus, by the express language of the statute itself, the People are required to show some nexus between the deadly weapon and the drug offense upon which the enhanced sentence is based.").

[48] *State v. Whitesides*, 725 S.E.2d 487, 489 (S.C. 2012). The court explained,
The statute punishes the visible display of a knife or an object that appears to be a firearm during the commission of a violent crime. Visibly displaying a knife or an object that appears to be a firearm furthers the criminal's objectives by increasing the cost of resistance or interference. Thus, a nexus is inherent in this prohibited conduct.
    The statute also criminalizes the possession of a firearm during the commission of a violent crime even if not visibly displayed. Because a firearm has greater power to inflict harm, its mere presence at the scene of the crime is a greater threat than that of a knife or an object that appears to be a firearm. Thus, the General Assembly determined that merely possessing a firearm in furtherance of a violent crime warrants a penalty.
*Id.*

have some purpose or effect with respect to the drug trafficking crime . . . . [T]he gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense."[49]

With this general background, we turn to the present case.

## III.

Appellant contends that "exhibited a firearm" means that the firearm must facilitate or in some way further the associated felony. The State responds that the word "exhibit" should be construed broadly, according to its plain meaning, and without any requirement of facilitation or relationship with the associated offense.

We agree with appellant and those states that have held that an overly expansive interpretation of "exhibit" can lead to absurd results.[50]  To consider the absurd results which might occur without a facilitation requirement, let us put *Patterson*'s "doubtful scenario" of displaying a deadly weapon without using it[51] in specific terms.  Imagine the typical bank-robbery scenario: Dangerous Dan races into the bank and hands a note to the teller–"Your money or your life. I have a gun in my pocket." Dan's hand is tucked into his sagging jacket pocket. The teller hands over the money, and Dan runs out the door into the waiting arms of Officer Obie who removes a Beretta pistol from Dan's jacket pocket. Dan has "used" a

---

[49] *Smith v. United States*, 508 U.S. 223, 238 (1993) (analyzing 18 U.S.C. § 924(c)(1)).

[50] *See* notes 44, 47-48 *supra*.

[51] 769 S.W.2d at 941 ("Thus, one can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it").

deadly weapon during the commission of the offense even though he did not "exhibit" it.

But now suppose the reverse scenario: Chef Charlie is carrying his 18-inch butcher knife in one hand as he carries a large pan of dirty cooking oil in his other hand out the restaurant's back door, and he then carefully pours the oil into the nearby lake. The knowing unauthorized discharge of a pollutant into a lake is a felony offense,[52] and Charlie consciously displayed his butcher knife as he committed that offense. But the display of the butcher knife had no relationship to the felony.  Or imagine the bank president who has a fancy loaded derringer displayed prominently on his desk while he cheerfully embezzles money from a widow's account by forging her signature on checks; he is consciously displaying his prized derringer at the same time that he commits a felony, but the two actions, though simultaneous, are unrelated.  Or suppose that Dangerous Dan has a rifle rack in the cab of his truck. He always keeps his Ruger SR-22 autoloading deer-hunting rifle in that rack. One night he is driving home from a busy day of shooting and drinking when he is stopped for speeding and then arrested for DWI. Because he has two prior DWI convictions, Dan is charged with felony DWI. He has exhibited his rifle, a deadly weapon, during the commission of the felony offense of DWI, but that exhibition was wholly unrelated to the commission of the offense and did not help facilitate its commission.

Or, closer to home, take this scenario: Mr. Plummer is a felon who is working as a security guard, and he is wearing a holster with a small handgun in it at the same time he is

---

[52] TEX. WATER CODE §§ 7.145(a)(1), (b) & 7.187(a)(2)(F).

wearing a bullet-proof vest under his black T-shirt. He is committing the felony offense of possession of body armor by a felon and he is also consciously wearing his holster with a handgun in it, but does the display of the handgun have any relationship to the commission of the possession of body-armor offense? That deadly weapon may be "exhibited" in some sense, but it is not being "used" during the commission of the offense.

The purpose of the deadly weapon provision is to discourage and deter felons from taking and using deadly weapons with them as they commit their crimes.[53] Better an unarmed bank robber than an armed one, as the probability of actual violence during the robbery is increased when deadly weapons are involved.[54] But the deterrence rationale works only if the actor makes a conscious decision to "use" or "exhibit" the weapon to assist in committing the felony.[55] Thus, the mere possession of a deadly weapon during a felony offense is not covered by the statute.[56] Had the Legislature intended that mere possession could trigger a deadly-weapon finding, it could easily have said so. Because the Legislature did not do so,

---

[53] *See Coleman v. State*, 145 S.W.3d 649, 655-56 (Tex. Crim. App. 2004) (Cochran, J., concurring) (discussing history and rationale of the deadly weapon provision of Article 42.12, § 3g).

[54] *See Muscarello v. United States*, 524 U.S. 125, 132 (1998) (federal "deadly weapon" provision seeks "'to persuade the man who is tempted to commit a Federal felony to leave his gun at home'") (quoting *Busic v. United States*, 446 U.S. 398, 405 (1980)).

[55] *See Tyra v. State*, 897 S.W.2d 796, 804 (Tex. Crim. App. 1995) (Maloney, J., concurring) (noting that the reasons for the enactment of the deadly-weapon finding "are rational only if the issue of 'use' of the object found to be a deadly weapon involves some element of choice or decision on the part of the actor. . . . Likewise, the issue of increased culpability is dependent upon an actor's conscious assumption of the real and potential risks to others inherent in the use of an object as a deadly weapon.").

[56] *See Coleman*, 145 S.W.3d at 660 (Cochran, J., concurring).

it is only when the possession of the deadly weapon "facilitates the associated felony" that the factfinder may make an affirmative finding.[57]

Appellant's possession of body armor and the handgun is distinguishable from cases where deadly-weapon findings have been upheld. Although the mini-Glock in this case is a deadly weapon by nature, it did nothing to increase the risk of harm or otherwise contribute to the result of wearing body armor. Here, the handgun did not play any role in enabling, continuing, or enhancing the offense of possession of body armor. Both the body armor and the pistol were used for a common purpose–looking like a security guard–but neither offense, possession of body armor or possession of a deadly weapon, facilitated or furthered the commission of the other offense. There is no facilitation connection between the two. The facts in this case are like those in *Narron* and *Petty*. Appellant's mini-Glock was simply being possessed at the same time he possessed the body armor.

In sum, we hold that a deadly-weapon finding for a felony offense must contain some facilitation connection between the weapon and the felony. The deadly weapon must, in some manner, help facilitate the commission of the felony. Because there is no such evidence of any facilitation in this case, we conclude that the court of appeals erred in upholding the deadly-weapon finding. Therefore, we delete the deadly-weapon finding from the judgment, and we affirm the court of appeals's judgment as reformed.

Delivered: October 9, 2013
Publish

---

[57] *Patterson*, 769 S.W.2d at 941 (internal quotation marks omitted).