COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| EFRAIN JIMENEZ, | § | |
| Appellant, | § | No. 08-17-00124-CR |
| v. | § | Appeal from the |
| THE STATE OF TEXAS, | § | 384th District Court |
| Appellee. | § | of El Paso County, Texas |
| | § | (TC# 20150D04711) |

## O P I N I O N

Efrain Jimenez[1] was convicted by a jury of possessing a prohibited item in a correctional facility. *See* TEX. PENAL CODE ANN. § 38.11(g). After Jimenez pleaded true to the enhancement allegations in the indictment, a jury assessed punishment at twenty years' confinement. On appeal, Jimenez raises four issues that include procedural and sufficiency challenges pertaining to his conviction and to the entry of a deadly-weapon finding against him. We affirm.

## BACKGROUND

On December 3, 2014, Jimenez was housed as an inmate at the El Paso County Jail Annex in El Paso being held in administrative segregation. While Jimenez remained in his cell, two

---

[1] Jimenez was identified on the indictment as also being known as Efrain Venegas and Efrain Erin Venegas.

detention officers, Corporal Hernandez and Sergeant Santana, approached him to discuss an administrative complaint that had been filed against him for an incident that allegedly occurred weeks earlier, on November 16, 2014.[2] In the complaint, Jimenez had been accused by detention officer Corporal Brinks of cursing at her in violation of rules and regulations of the jail annex. Although Jimenez denied the allegation, officers informed him of a ruling against him; he had been found to have committed an administrative-rule violation due to his disrespectful conduct towards a member of the jail staff. When told of the hearing results, Jimenez reacted by getting upset and calling the decision "bullshit." He cursed, and complained that Corporal Brinks was a "bitch," a "whore," and a "fucking liar." Hearing the commotion, Corporal Figueroa walked over to speak with Jimenez. Sergeant Santana and Corporal Hernandez began walking away, but soon they heard Jimenez getting louder and banging on his cell door. As the two officers returned, Jimenez continued ranting and cursing at all three officers who were then present at his cell.

The detention officers tried to calm Jimenez, but he would not listen. Jimenez grew more upset, paced around, kicked his cell door, and continued to curse and yell. Due to Jimenez's unrelenting behavior, Corporal Figueroa called for assistance. Detention Officer Ortega attempted to diffuse the situation, but Jimenez continued pacing back and forth, kicking the door, and cussing in his cell. The detention officers then spoke with each other about transferring Jimenez to a cell designated for violent inmates which contains walls made from material that prevented a person from hurting themselves. Officer Ortega testified that the violent cell is utilized when officers

---

[2] The cell for each inmate had a sliding metal door made of thin, see-through mesh with little holes large enough for a pencil to pass through. Each door had a large window made of thick glass and a small opening though which items could be passed without having to open the door. In addition, about an inch of open space separated the bottom of the door from the cell floor.

have concerns that an excited inmate may cause a riot with other inmates. After Corporal Figueroa ordered that Jimenez be taken to the violent cell, Officer Ortega approached Jimenez and instructed him to turn around to be handcuffed. Jimenez continued pacing in a circle and refused to comply. As Officer Ortega entered the cell, Jimenez reached to his mattress and grabbed an item with a wire attached. Fearing for his safety, Ortega quickly closed the door and advised the other officers that Jimenez had a shank.

The shank, which was admitted into evidence at trial, was made of fence wire, similar to that found in the visitation areas of the annex, with one end fashioned into a handle and the other sharpened to a blade. Sergeant Santana explained that the term "shank" could refer to anything that could physically harm someone. These shanks could be made by inmates taking an item and scratching it against the cement floor of a cell until it sharpened. Sergeant Santana testified that Jimenez's shank met the legal definition of a deadly weapon due to its size and sharp end, and she explained, "if that stabbed [me] in my neck, my eye, in my head, anywhere on my body[,] it can cause serious damage, even death." Likewise, Detention Officer Ortega testified that he also considered the shank as a deadly weapon because it could have been used to kill someone.

With a clenched fist, Jimenez held the shank pointing outwards, paced around his cell, tensed his body up, and kicked his cell door. While the detention officers attempted to calm him and pleaded for him to relinquish the shank, Jimenez exclaimed that he was "going to fuck somebody up," and told the detention officers, "[o]pen the door. Just wait. Open the door." Jimenez also threatened to hurt Corporal Figueroa. The detention officers called for a Special Reaction Team to respond, which is a unit of officers equipped to handle situations where an inmate poses a threat, but after several minutes, Jimenez relented and slid the shank under his cell

3

door.  The Special Reaction Team was then called off before they arrived.

*Proceedings Prior to Trial*

On September 29, 2015, Jimenez was re-indicted for possession of a prohibited item in a correctional facility, with the indictment alleging that Jimenez used and exhibited a deadly weapon—i.e., a sharpened wire—during the commission of an offense.  The indictment alleged as follows:

> [T]hat on or about the 3rd day of December, 2014, and anterior to the presentment of this indictment, in the County of El Paso and State of Texas, EFRAIN JIMENEZ AKA EFRAIN VENEGAS AKA EFRAIN ERIN VENEGAS, hereinafter referred to as Defendant, did then and there intentionally or knowingly possess a deadly weapon, to wit: a sharpened wire, that in the manner of its use and intended use was capable of causing death and serious bodily injury, while in a correctional facility, to wit: The El Paso County Detention Facility,
>
> And it is further presented that the said Defendant used and exhibited a deadly weapon, to wit: a sharpened wire, during the commission of and immediate flight from said offense . . . .

On February 10, 2016, the trial court entered an order for a mental health examination of Jimenez to be completed by Dr. Cynthia Rivera.  The order recited the trial court's consideration of a motion for an examination filed by Jimenez.  On February 12, 2016, the trial court entered a second order for a mental health examination which changed the date of the examination from the first order, and on the same day, the State filed a notice of prospective witnesses for a competency trial.  Then on March 22, 2016, the trial court entered an order transferring Jimenez's case from the court's competency docket back to its original docket.  This order recited the following findings:

> Be it remembered that on this the date in the above entitled and numbered cause, came to be heard the question of the present competency or incompetency of the Defendant.

4

The jury having been waived, and the parties having appeared in Court, upon announcement of ready by both parties, the parties presented evidence to the Court. Upon both parties resting and the matter having been submitted to the Court, the Court after due deliberation, made the following findings:

Defendant is competent to stand [trial] based on a report from Dr. Cynthia Rivera.

On the face of the order, the two signature lines for the district attorney and defense attorney were left blank. The record reveals no objection made to the trial court's determination of competency.

When trial began and before presentation of evidence in the State's case-in-chief but after jury selection, the State read the indictment in the presence of Jimenez, his attorney, and the jury, and Jimenez entered a plea of not guilty. Thereafter, the State presented testimony from Sergeant Santana, Officer Ortega, and Sergeant Ende, a shift sergeant at the jail annex, in its case-in-chief. Jimenez also presented testimony from staff members of the jail annex. The jury charge included an instruction describing a deadly weapon as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything in the manner of its use or intended use that is capable of causing death or serious bodily injury." In the application paragraph, the court charged the jury that it should find Jimenez guilty "as charged in the indictment" if it found beyond a reasonable doubt that, on the date alleged, Jimenez had intentionally or knowingly possessed a deadly weapon, to wit: a sharpened wire, that in the manner of its use and intended use was capable of causing death or serious bodily injury. No objection was made to the jury charge.

After deliberations, the jury returned a general verdict finding Jimenez guilty "as charged in the [i]ndictment." The trial court later entered a deadly-weapon finding on the judgment which designated the sharpened wire as the deadly weapon. This appeal followed.

## DISCUSSION

5

*Issue One: Whether Jimenez was Denied his Right to be Arraigned*

In his first issue, Jimenez complains the record does not reflect he was arraigned, and he asserts this purported absence of arraignment entitles him to a new trial. The State responds that not only has Jimenez waived any complaint relating to arraignment but that, absent any affirmative evidence to the contrary, we must presume he was arraigned and any failure to arraign would be harmless based on the record of the proceedings. We hold Jimenez has waived any complaint that he was not arraigned.

In all felony cases and misdemeanor cases punishable by imprisonment, there shall be an arraignment. TEX. CODE CRIM. PROC. ANN. art. 26.01. The purpose of an arraignment is to fix the defendant's identity and to hear his plea. TEX. CODE CRIM. PROC. ANN. art. 26.02. The arraignment is not part of the jury trial, and it may be waived. *Richardson v. State*, 508 S.W.2d 380, 381 (Tex. Crim. App. 1974); *Eckels v. State*, 220 S.W.2d 175, 177 (Tex. Crim. App. 1949). Like many other rights afforded to a defendant, waiver of arraignment may be shown by a failure to object in the trial court. *Buck v. State*, 503 S.W.2d 588, 589 (Tex. Crim. App. 1974); *Eckels*, 220 S.W.2d at 177. Moreover, when a defendant, represented by counsel, enters his plea to the indictment, he likewise waives his right to an arraignment because this step negates the sole purpose of an arraignment in determining his identity and plea. *Richardson*, 508 S.W.2d at 381-82.

Here, Jimenez waived his complaint. The record shows he made no objection to the trial court based on this purported lack of arraignment. For this reason alone, he has waived his complaint. *See Buck*, 503 S.W.2d at 589 ("There is nothing in the record to indicate that the appellant requested an arraignment or objected to the absence of an arraignment or otherwise raised

6

this matter in the trial court. Such error, if any, was waived."); *see also Eckels*, 220 S.W.2d at 177 (same). Furthermore, the sole purpose of arraignment was accomplished when, without objection, the State read the indictment in the presence of Jimenez and his attorney, and Jimenez entered a plea of not guilty before the commencement of the State's presentation of evidence in its case-in-chief. For this reason, as well, Jimenez waived any complaint based on the alleged absence of an arraignment. *Richardson*, 508 S.W.2d at 381-82. We therefore overrule Jimenez's first issue presented for review.[3]

### Issue Two: Whether Jimenez was Denied his Right to a Competency Hearing

In his second issue, Jimenez argues that his right to due process was violated by the trial court's alleged failure to conduct a trial on the issue of his mental competency. The State argues, first, that the trial court's competency order shows that Jimenez was not denied a competency trial, and second, that the order should be entitled to a presumption of regularity and truthfulness in the absence of any proof to the contrary.

As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). The Legislature has codified this due-process requirement by setting forth a substantive and procedural framework for making competency determinations to ensure that legally incompetent criminal defendants do not stand trial. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.003, 46B.004, 46B.005; *Boyett*, 545 S.W.3d at 563. Substantively, incompetency to stand trial is shown if the defendant does not have:

---

[3] Even were we to conclude that Jimenez preserved his complaint for review, we would still find his argument without merit. Rule 44.2 requires a court of appeals to presume that a defendant was arraigned unless the matter was disputed in the trial court or the record affirmatively shows the contrary. TEX. R. APP. P. 44.2(c)(3). As Jimenez has done neither, we cannot disrupt this presumption, and we would be forced to overrule his contention for this reason, as well.

(1) sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him or her. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Boyett*, 545 S.W.3d at 563. Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial. *Boyett*, 545 S.W.3d at 563. The first step is an informal inquiry, and the second step is a formal competency trial. *Id.* An informal inquiry is required upon a suggestion from any credible source that the defendant may be incompetent. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (c), (c-1); *Boyett*, 545 S.W.3d at 563. At the informal inquiry, if there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial, the trial court must then order a psychiatric or psychological competency examination and, except for certain exceptions, hold a formal competency trial. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.004(c), 46B.005(a), (b), 46B.021(b); *Boyett*, 545 S.W.3d at 563. When a trial court errs in failing to properly conduct a competency trial, the remedy is to abate the appeal and remand the cause to the trial court to conduct a retrospective trial, if one is feasible. *See Turner v. State*, -- S.W.3d --, No. AP-76,580, 2018 WL 5932241, at *8 (Tex. Crim. App. Nov. 14, 2018).

Under the current statute, the trial court makes the ultimate determination with respect to competency unless either of the parties or the trial court itself registers a preference that a jury shall make the determination. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.051; *Turner v. State*, 422 S.W.3d 676, 693 n.35 (Tex. Crim. App. 2013). And, as applicable here, when a trial court enters an order disposing of a proceeding in the lower court, we employ an often-used judicial construct by applying a presumption of regularity and truthfulness to recitations in such documents

8

and proceedings in the lower court. *See Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000); *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984); *see also Keller v. State*, 125 S.W.3d 600, 605 (Tex. App.—Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex. Crim. App. 2004) ("A presumption of truthfulness and regularity applies to documents filed in the trial court."). The presumption is not irrebuttable, but it is incumbent on the party challenging the particular document or proceeding to present affirmative evidence to the contrary. *See Light*, 15 S.W.3d at 107; *Breazeale*, 683 S.W.2d at 450.

In the present case, the only evidence in the record bearing on the issue of whether Jimenez had a competency hearing consists of the trial court's order transferring his case from the court's competency docket back to its original docket. This order recites that the issue of Jimenez's competency was decided by the trial court after a jury was waived, both parties announced ready for a hearing, and the parties presented evidence to the court. The order further states the court found Jimenez to be competent, based on the report from Dr. Cynthia Rivera, after both parties rested and submitted the matter to the court. Nothing in the record affirmatively contradicts these recitations, and no objection was made to the order. Applying the presumption of truthfulness and regularity to the trial court's order, we must find that Jimenez had a bench trial on the issue of his competency. *See Light*, 15 S.W.3d at 107; *Breazeale*, 683 S.W.2d at 450; *Keller*, 125 S.W.3d at 605.

In his brief to this Court, Jimenez points out that the competency order was not signed by either defense counsel or the State. However, this Court has previously held that the lack of defense counsel's signature in a blank space on a document, alone, does not overcome the presumption of regularity that we employ with respect to the documents of a trial court. *See*

9

*Aragon v. State*, No. 08-05-00350-CR, 2008 WL 467446, at *3 (Tex. App.—El Paso Feb. 21, 2008, no pet.) (not designated for publication) (holding that the lack of any signature on the spaces for both defense counsel's identification and for the waiver of counsel did not overcome the presumption of regularity when the judgment stated that the defendant was represented by counsel).  Because the trial court's competency order indicates that the court held a bench trial on the issue of competency, we conclude that the presumption of truthfulness and regularity applies. Accordingly, we overrule Jimenez's second issue presented for review.

### *Issues Three and Four:  Whether the Deadly-Weapon Finding was Proper*

In Jimenez's third and fourth issues, he challenges the trial court's entry of a deadly-weapon finding.  In his third issue, he argues that he merely possessed the sharpened wire and that this possession, alone, did not constitute use or exhibition as required for a deadly-weapon finding. In his fourth issue, he argues that the evidence was insufficient to show that the sharpened wire was, in fact, a deadly weapon.  The State counters that Jimenez waived his third issue by his failure to object on that basis but, in any case, the evidence showed both that Jimenez actively employed the sharpened wire, thereby demonstrating its use, and that the sharpened wire constituted a deadly weapon through its adaption or manner of its use.  We will address these two issues together.

### Did Jimenez Waive His Complaint Regarding Use
### or Exhibition of a Deadly Weapon?

At the outset, while acknowledging that complaints regarding the imposition of deadly-weapon findings have traditionally been regarded as legal-sufficiency claims, the State relies primarily on *Keller v. State* for its contention that Jimenez waived any sufficiency complaint about whether he used or exhibited the sharpened wire by his failure to lodge any objection on that basis in the trial court.  *See Keller*, 125 S.W.3d at 600.  In *Keller*, the defendant pleaded guilty and, on

appeal, challenged the trial court's denial of various issues raised in his motion for new trial. *Id.* at 603. In one particular issue, the defendant argued that his plea agreement was illegal because it was legally impossible for him to have been convicted of using or exhibiting a deadly weapon during the course of his solicitation offense. *Id.* The court of appeals held that he waived this complaint because he never asked to withdraw his plea of guilt nor raised any objection alerting the trial court to that complaint. *Id.* at 603-04.

We first note our agreement with the State that contentions regarding whether a defendant used or exhibited a deadly weapon appear to be viewed through the same lens as claims of legal sufficiency. *See Searcy v. State*, 115 S.W.3d 628, 630 (Tex. App.—Waco 2003, no pet.) ("Admittedly, a defendant's use or exhibition of a deadly weapon does not always constitute 'a substantive element' of the offense. . . . Nevertheless, this Court and others frequently review the legal sufficiency of the evidence to support such a finding."); *cf. Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding that a writ applicant's challenge to a jury's determination that he used or exhibited a deadly weapon during the commission of the offense was a claim directed at the legal sufficiency of the evidence). We believe, however, that the procedural posture in which the *Keller* defendant appealed the denial of his motion for a new trial after he pleaded guilty to his offense makes *Keller* inapplicable here. We reach this conclusion in light of the fact that, as noted in *Keller* in the resolution of a separate issue, a plea of guilty waives all non-jurisdictional defenses, including challenges to the sufficiency of the evidence. *See Keller*, 125 S.W.3d at 605 (citing *Ex parte Williams*, 703 S.W.2d 674, 682 (Tex. Crim. App. 1986)).

While we are not necessarily unpersuaded that waiver principles could apply to a complaint of this nature, we will assume, without deciding, that Jimenez did not waive his deadly-weapon

11

complaint because our resolution of the merits on this issue requires us to overrule it for the reasons stated below.

## Standard of Review

In evaluating claims directed at the propriety of a deadly-weapon finding, we review the record for legal sufficiency and consider the combined and cumulative force of all admitted evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in making the deadly-weapon finding. *Iglesias v. State*, 564 S.W.3d 461, 465 (Tex. App.—El Paso 2018, no pet.) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

## Did Jimenez "Use or Exhibit" a Deadly Weapon?

If the fact finder affirmatively finds that a deadly weapon was used or exhibited in a felony offense, the trial court must enter an affirmative finding in the judgment. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (now codified at TEX. CODE CRIM. PROC. ANN. art. 42A.054(b)-(d)). "Use" means the deadly weapon was employed or utilized to achieve its purpose. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). "Exhibited" means the weapon was consciously shown or displayed during the commission of the offense. *Id.*

The essential requirement for a deadly-weapon finding is that there be some facilitation or furtherance between the weapon and the commission of the felony or the immediate flight therefrom. *See Plummer v. State*, 410 S.W.3d 855, 865 (Tex. Crim. App. 2013). Any employment of a deadly weapon, even simple possession, can supply the basis for a deadly-weapon finding if the possession facilitates the felony. *Patterson*, 769 S.W.2d at 941; *see also Plummer*, 410 S.W.3d at 859 (explaining that Texas courts have upheld deadly-weapon findings where a defendant, even

12

without overtly using or brandishing a gun, possessed both guns and drugs because the weapon reasonably could have protected and facilitated the defendant's care, custody, and management of the contraband). There is no requirement that the use or exhibition of the weapon must be associated with a second, separate felony even if it also supplies the basis for an element of a charged offense. *See Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). But mere possession alone, without any showing that the deadly weapon facilitated the felony, cannot serve as the basis of a deadly-weapon finding. *Plummer*, 410 S.W.3d at 864; *see also Narron v. State*, 835 S.W.2d 642, 644 (Tex. Crim. App. 1992); *Ex parte Petty*, 833 S.W.2d 145, 145-46 (Tex. Crim. App. 1992), *abrogated on other grounds by Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004) (cases holding that mere unlawful possession of a weapon could not supply the basis of a deadly-weapon finding where a defendant was charged with committing unlawful possession of a firearm and did not in any way use the firearms to facilitate the unlawful-possession offense). This is because the purpose of the deadly weapon provision is to discourage and deter felons from taking and using deadly weapons with them as they commit their crimes, and this deterrence rationale works only if the actor makes a conscious decision to use or exhibit the weapon to assist in committing the felony. *Plummer*, 410 S.W.3d at 864.

Here, Jimenez cites a string of cases, including *Ex parte Petty*, *Narron*, *Patterson*, and *Plummer*, for the proposition that the deadly-weapon finding was improper because, even assuming that he used or exhibited a deadly weapon, the use of that weapon could not form both the basis of his charged offense and the basis of the deadly-weapon finding. However, the Court in *Tyra* expressly stated to the contrary and explained there was no statutory language to support an argument that "used or exhibited a deadly weapon during commission of a felony offense"

13

means "used or exhibited a deadly weapon during commission of an offense which does not otherwise require the use or exhibition of a deadly weapon." *Tyra*, 897 S.W.2d at 798. And the fact that a felony offense might always involve use of a deadly weapon would not change the meaning of the phrase "used a deadly weapon" because, "[t]here is simply nothing in the phrase 'used a deadly weapon' to imply that it must always be used to commit an 'associated offense.'" *Id.* Furthermore, the crux of the analysis in the line of cases stretching from *Patterson* to *Plummer* is simply whether the use or exhibition of a deadly weapon facilitated the commission of any felony offense. *See Plummer*, 410 S.W.3d at 865; *Patterson*, 769 S.W.2d at 941. Based on guidance from those cases, we overrule this first portion of Jimenez's argument.

Jimenez also asserts that his acts with the sharpened wire did not facilitate the commission of his charged offense for possessing a prohibited item in a correctional facility. We disagree because the record at trial showed Jimenez employed the sharpened wire, i.e. shank, in such a manner as to increase the risk of harm to the surrounding detention officers and prevented them from dispossessing him of the weapon. When Detention Officer Ortega attempted to enter Jimenez's cell, Jimenez walked over to his bed, retrieved the shank, and turned to face Ortega with it in hand. Even before Detention Officer Ortega opened Jimenez's cell door and Jimenez grabbed his shank, Jimenez was in possession of the shank by keeping it stored in his cell and under his bed. *See* TEX. PENAL CODE ANN. § 1.07(a)(39) (defining possession as actual care, custody, control, or management). Based on the design of the shank, as will be described in more detail below, Sergeant Santana and Detention Officer Ortega were concerned Jimenez could kill someone with it. Ortega immediately closed the cell door, and while in his cell, Jimenez held the shank outwards in a clenched fist while pacing back and forth, tensing up, and kicking his cell

14

door. Even though Jimenez was separated from the detention officers by his cell door and eventually relinquished the shank, he continued to employ the shank for several minutes all while he threatened to "fuck somebody up." Jimenez's actions with the weapon prevented the officers from immediately bringing him out of his cell and dispossessing him of the shank.

On review of the record, we conclude that this case is not one involving mere possession of a deadly weapon. Through Jimenez's employment of his shank—hidden under his mattress until he retrieved it for use against the detention officers—he presented a very real threat of injury to the officers and prevented them from dispossessing him of the shank for the several minutes during which he held it at the ready and threatened harm, and thus, we conclude he used it to facilitate his commission of the offense of possessing a prohibited item in a correctional facility. *See Plummer*, 410 S.W.3d at 865; *see also Garner v. State*, 864 S.W.2d 92, 103 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding that the defendant, charged with possession of a firearm by an ex-felon, used the handgun when he fired the handgun in the direction of an officer); *Jurado v. State*, No. 07-97-0102-CR, 1998 WL 537383, at *3 (Tex. App.—Amarillo Aug. 25, 1998, pet. ref'd) (not designated for publication) ("While in possession of the prohibited weapon, the evidence establishes that appellant shot the prohibited weapon and killed Carbajal. Hence, appellant employed, wielded and shot the deadly weapon while unlawfully possessing the illegal firearm. We are persuaded that the evidence established more than just 'mere possession' of a prohibited weapon."). Accordingly, we overrule the second portion of Jimenez's third issue presented for review.

### Was the Sharpened Wire a Deadly Weapon?

The Texas Penal Code defines a deadly weapon as: (A) a firearm or anything manifestly

15

designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(A), (B). Only one of these alternative definitions must be met in order to prove that an item qualifies as a deadly weapon. *Iglesias*, 564 S.W.3d at 466 (citing *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991)).

After the parties in this case filed their briefs and the case was submitted to this Court, we issued our opinion in *Iglesias* where we decided the same deadly-weapon sufficiency complaint adversely to the appellant in a case with similar facts. *Iglesias*, 564 S.W.3d at 465-66. In *Iglesias*, the defendant was charged with possessing a deadly weapon in a penal institution, and the weapon was shown to be "shank" consisting of two separate items that could be assembled together: a scrub brush modified into a handle and a plastic eyeglass earpiece sharpened at the edges. *Id.* at 464. We held the evidence legally sufficient to show the shank was designed, made, or adapted for the purpose of inflicting death or serious bodily injury because the brush and earpiece were crafted into a shank with a sharp point that could be used as a stabbing weapon to cause harm to officers and other inmates. *Id.* at 466.

Likewise, the deadly weapon at issue in this case was described as a shank and made of fence wire with one end modified into a handle and the other end sharpened. It was admitted into evidence at trial for the jury to see, and both Sergeant Santana and Detention Officer Ortega said it was capable of seriously injuring or even killing someone. And in light of our opinion in *Iglesias*, we hold that the sharpened wire here was a deadly weapon. *See Iglesias*, 564 S.W.3d at 466; *see also Shugart v. State*, 32 S.W.3d 355, 360 (Tex. App.—Waco 2000, pet. ref'd) (holding that evidence of a shank–an icepick-type weapon consisting of a metal rod sharpened at one end and

16

wrapped with a cloth at the other end–was legally sufficient to satisfy a deadly-weapon finding); *Smith v. State*, 51 S.W.3d 806, 809 (Tex. App.—Texarkana 2001, no pet.) (holding in an aggravated assault case that evidence of a shank in the form of a sharpened piece of metal found lodged in an inmate's toilet permitted the jury to conclude that the object was a deadly weapon); *Crittendon v. State*, 923 S.W.2d 632, 635 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (holding that evidence of a prisoner-made shank–a metal rod with sharpened tip and paper handle–was sufficient to permit a rational trier of fact to conclude that the defendant committed the offense of possession of a deadly weapon in a penal institution). Thus, we conclude that the trial court committed no error in its entry of the deadly-weapon finding, and we overrule Jimenez's fourth issue.[4]

## CONCLUSION

Having overruled all issues presented for review, we affirm the trial court's judgment and its entry of the deadly-weapon finding.


May 8, 2019                                    GINA M. PALAFOX, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[4] In Jimenez's fourth issue presented for review, he mentions, "a deadly weapon special issue was not submitted to the jury as a special issue and [sic] neither in the guilt-innocence jury charge nor the punishment charge." While he does not argue this would dictate an outcome different than what we would decide based upon our resolution of the two sub-issues addressed above, it is well settled that one way in which a trier of fact can make an affirmative finding of a deadly weapon to permit entry of such a finding on a judgment is where an indictment specifically alleges that a "deadly weapon" was used and the defendant was found guilty "as charged in the indictment." *Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016) (citing *Polk v. State*, 693 S.W.2d 391, 393-96 (Tex. Crim. App. 1985)). Here, the indictment alleged that Jimenez used a "deadly weapon," and the jury's general verdict expressly found him guilty "as charged in the indictment." Therefore, the jury made an express deadly-weapon finding. *See Duran*, 492 S.W.3d at 746; *Polk*, 693 S.W.2d at 393-96. And we would therefore overrule any contention from Jimenez on this basis.